## UNITED STATES *v.* BARUCH.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE
SECOND CIRCUIT.

No. 190.   Argued November 13, 14, 191*.—Decided February 19, 1912.

Cotton featherstitch braids are properly assessed at sixty per centum
as braids under the trimming schedule, par. 339, and not at forty-
five per centum as tapes or bindings under notions schedule, par. 320
of the Tariff Act of July 24, 1897.

Where a conflict which had existed under prior tariff acts as to the clas-
sification of articles had been settled, Congress will not be presumed
in enacting a new tariff to renew the conflict by not adhering to the
commercial and tariff meaning of the terms as it had been settled.

The soundness of the judicial construction of a statute is reinforced
by the fact that it had been the construction given by the Executive
Department charged with its enforcement ever since its adoption.

172 Fed. Rep. 342, reversed; 159 Fed. Rep. 294, affirmed.

THE facts, which involve the classification of cotton-
featherstitch braids under the tariff act of 1897, are stated
in the opinion.

*Mr. Assistant Attorney General Wemple*, with whom
*Mr. Charles E. McNabb, Assistant Attorney* was on the
brief, for the United States.

*Mr. Wade H. Ellis*, with whom *Mr. John A. Kratz, Jr.*,
was on the brief, for respondents.

MR. CHIEF JUSTICE WHITE delivered the opinion of the
court.

This case concerns the proper classification of merchan-
dise imported in 1899, and subsequent years, by the

respondent at the port of New York, invoiced as "cotton-featherstitch braids." The goods consisted of articles ranging variously from about one-fourth to one-half of an inch in width, loom woven, of white or colored threads throughout, or of mixed white and variously colored threads of cotton or other vegetable fiber, and ornamented with raised figures in various designs, some of which had plain and others scalloped or looped edges. They were officially appraised as "cotton braids—sixty percentum;" and were accordingly classified by the collector as "braids" under paragraph 339 of the tariff act of July 24, 1897 (30 Stat. 151, 181, c. 11), generally referred to as the "trimmings" schedule, the pertinent provision of which is as follows: "Embroideries and all trimmings, including braids, edgings, insertings, flouncings, galloons, gorings and bands, . . . composed wholly or in chief value of flax, cotton, or other vegetable fiber, and not elsewhere specially provided for in this Act."

Asserting that the articles should not have been assessed at 60 per cent. but were dutiable at the rate of 45 per cent. ad valorem under paragraph 320 of said act, usually styled the "notions" schedule, as "bindings" or as "tapes . . . made of cotton or other vegetable fiber," the importers duly protested, and the question of the proper classification was considered by the Board of General Appraisers. That body, on July 24, 1906, sustained the decision of the collector, upon the authority of a ruling made in the case of Straus Bros. & Co., wherein the Board but acted upon the evidence taken in and applied the ruling made in what is known as the *Vom Baur Case.* The importers carried the case to the Circuit Court, and in that court additional evidence was introduced by both parties. Upon such additional evidence and the evidence taken before the board, the decision of the board was affirmed on November 23, 1907. 159 Fed. Rep. 294. On appeal, however, the Circuit Court of Ap-

peals held the merchandise dutiable at 45 per cent. ad valorem as "binding," under § 320, and the decision of the Circuit Court was reversed. 172 Fed. Rep. 342. This writ of certiorari was then allowed.

Under the tariff acts of 1890 (May 9, 1890, 26 Stat. 105, c. 200) and 1894 (August 27, 1894, 28 Stat. 509, c. 349) braids were enumerated in the "notions" schedule, which carried a lower rate of duty than articles in the "trimmings" schedule.

*In re Dieckerhoff,* 54 Fed. Rep. 161, involved a review of the decision of the Board of General Appraisers (G. A. 1301) in the matter of an importation, in 1891, of articles similar to those here in question, dutiable under the tariff act of 1890. The controversy was whether the goods should have been assessed at the rate of 60 per cent. ad valorem as cotton trimmings under the "trimmings" schedule, paragraph 373 of the tariff act of 1890, or assessed as cotton braids at 35 cents per pound under the "notions" schedule of the same act. The Government insisting on the higher duty, contended that the articles should be classified as cotton trimmings, and were not braids, because to be such they must be braided. The importers, however, contending for the lower duty, urged that the goods were commonly known as featherstitch braids, and should be classified as braids, and thus be brought under the notion schedule bearing the lower duty. The court overruled the contention of the Government, accepted the commercial designation, and sustained the ruling of the Board of General Appraisers that the goods were braids, and dutiable as such. The Government acquiesced in this decision. The administrative rule, therefore, under the tariff act of 1890, was to classify the articles in question as braids embraced within the notions schedule, and thereby cause them to carry a lower duty than they would have carried had they been embraced in the trimmings schedule; and under the act of 1894 the

same practice was pursued. When, by the act of 1897, upon which this case depends, braids were taken out of the notions schedule carrying a lower duty and put in the trimmings schedule which carried the higher, the articles continued to be classed as braids, and consequently, because of the change in the law, were assessed for a higher duty. And this administrative construction was applied under the act of 1897 for a considerable number of years. See G. A. 4326 (T. D. 20,515), decided January 3, 1899, and G. A. 4929 (T. D. 23,073), decided May 27, 1901.

When the latter decision was rendered (May 27, 1901), however, the importer appealed from the ruling, and the Circuit Court for the Southern District of New York, in *Steinhardt* v. *United States*, 121 Fed. Rep. 442, reversed the decision of the Board of General Appraisers and held that the articles were dutiable as bindings under the notions schedule and not as braids under the trimmings schedule. The reasoning was this—the court said (p. 443): "The articles in question appear to be narrow woven tapes of cotton used largely for covering the seams of underwear and waists. The Standard Dictionary gives one definition of a 'braid' as 'a narrow, flat tape or woven strip for binding the edges of fabrics, or for ornamenting them.' If these articles are braids within this or a like definition, they are also bindings or tapes within paragraph 320 . . ." Thus finding the articles to be within the dictionary definition of both braids and bindings, as the trimmings schedule in which braids were embraced, paragraph 339, contained a general qualification that articles therein named should be liable to the duty therein specified when "not elsewhere specially provided for in this act," the court held that as the braids in question were within the dictionary definition of bindings they were therefore otherwise provided for and should be classed within the notion schedule, paragraph 320, and carry the lower duty. The Government did not appeal from this decision, under the

instructions of the Attorney General. Such instructions, however, expressly directed that in all future importations the decision should not be applied, but that duty should be assessed according to the prior practice so that a test case might be made. (T. D. 24,269.) It is persuasively indicated by what we shall hereafter state, that this course was followed, because the record in the *Steinhardt Case* did not contain what was deemed to be adequate proof as to the accepted commercial designation of the articles to afford a proper basis for testing the matter in that case, a deficiency which it may well be surmised arose from the belief on the part of the Government in making up that case that the settled administrative practice based upon the previous judicial construction would not be departed from.

The classification again came under consideration in what is known as the *Vom Baur Case*, and much testimony was taken before the board "for the purpose of showing that the articles were commercially known as braids, and were so commercially known at and prior to the passage of the tariff act of 1897, and therefore dutiable under paragraph 339." In an exhaustive review of the evidence in that case the board held that the testimony established that there had been no change in the commercial designation of the articles since 1892, at which time, as heretofore stated, the goods were commercially known as "featherstitch braids," and such had been judicially determined to be the case by the Circuit Court in the *Dieckerhoff Case, supra.* The board pointed out that in the case before it the importers had taken a position the opposite to that which had been assumed by the importers in the *Dieckerhoff Case,* since in that case, for the purpose of obtaining the lower duty under the act of 1890, they had insisted that the articles were commercially known as braids, and were dutiable as such; and in the case under consideration the contention was that there was no general and definite

trade designation of the articles as braids, since they were known as bindings and tapes, as well as by the name of featherstitch braids, and that they were in fact tapes, having been produced by weaving instead of by braiding.

The following questions were considered by the board in connection with an extended review of the testimony:

"First. Were these goods known in the trade and commerce of this country at and immediately prior to July 24, 1897, as 'braids'?

"Second. If the goods were commercially known as 'braids' at and immediately prior to July 24, 1897, are they dutiable under paragraph 339?"

On the record before it it was found "as matter of fact":

1. That the goods in question were generally known in the wholesale trade of the United States at and prior to July 24, 1897, as "featherstitch braids."

2. That the term "featherstitch braids" was the only general commercial name under which the goods were known in the trade and commerce of this country at and immediately prior to July 24, 1897, and that the terms "seam bindings," "finishing tapes," and others are subordinate names which have not been generally employed to designate these goods.

The board concluded its opinion as follows:

"In view of these findings, we think the case is distinguished from the *Steinhardt Case* (*supra*). That case only decided that if the articles were braids within the lexicographical definitions they were also bindings or tapes, and were therefore, more specifically provided for in paragraph 320. There was no satisfactory testimony in the case as to the commercial designation of the articles, whereas it has now been shown by competent testimony that they are generally known in the commerce of this country as 'braids,' and not as 'tapes' or 'bindings.' The Circuit Court of Appeals in *Hiller* v. *United States* (106 Fed. Rep. 73), decided that cotton braids of all

classes are included within the scope of paragraph 339. The decision of the court is in part as follows: 'A comparison of the provisions of the cotton schedules in the acts of 1894 and 1897 in regard to the classification of braids is, however, quite significant of the intent of Congress. Paragraph 263 of the act of 1894, which corresponds to paragraph 320 of the act of 1897, imposed a duty of 45 per cent. upon cords, braids, etc., made of cotton, but braids are omitted in paragraph 320 of the new act, which imposes the same duty. Paragraph 276 of the act of 1894, which corresponded to paragraph 329 of the new act, omitted braids, which was inserted in paragraph 339—the one under consideration. A comparison of the two acts indicates that Congress intentionally took braids out of the 45 per cent. paragraph, where it had been in 1894, and put the article into a paragraph imposing the higher rate of duty, and that it intended to impose the rate upon the articles, irrespective of the use to which they might be applied.'

"Under this decision, featherstitch braids, which were held in the *Dieckerhoff Case* to be dutiable as 'braids' under the act of 1890, and which we have found were commercially known as 'braids' at the time of the passage of the act of July 24, 1897, are, in our opinion, dutiable as assessed under the provisions of paragraph 339 of the act of July 24, 1897."

On the appeal of the importers, the decision was affirmed, "on the opinion of the Board," which is set out *verbatim* in the report of the case. *Vom Baur* v. *United States*, 141 Fed. Rep. 439. An appeal was taken from the decision, but it was subsequently dismissed without prejudice.

As already stated, the Board of General Appraisers, in the case at bar, rested their decision upon the evidence taken and its ruling in the *Vom Baur Case*. As also stated, that evidence was supplemented in the Circuit

Court by evidence taken on behalf of both parties to the controversy. Such further testimony, it was observed by the Circuit Court, did not tend to weaken the conclusion reached by the board, "that these goods were known generally in the trade as featherstitch braids prior to 1897," but "in truth it serves to strengthen it."

In the opinion of the Circuit Court of Appeals, reversing the decision of the Circuit Court, the court referred to the "merchandise in question" as consisting "of narrow woven strips bearing 'featherstitch' or 'herringbone' ornamentation," and substantially conceded that the Circuit Court and Board of Appraisers correctly decided "that prior to 1897 it was generally commercially designated as 'featherstitch braid.'" Accepting this commercial designation, however, and evidently relying upon the reasoning of the opinion in the *Steinhardt Case*, it was in effect held that the braids in question were not used "for ornamental purposes solely," but "being used for the purpose of binding seams are, in our opinion, the kind of braids properly called bindings." Referring to § 320 of the act of 1897 as the "notions" paragraph, and § 339 as the "trimmings" paragraph, the court then said:

"And we think that it may fairly be assumed that when Congress inserted the word 'bindings' in the 'notions' paragraph and transferred the word 'braid' to the 'trimmings' paragraph with words of qualification, it intended to embrace in the latter paragraph only such braids as were not bindings.

"If the articles are bindings as well as braids, the provision in the 'notions' paragraph is the more specific. Bindings are embraced without words of restriction or qualification. These articles as bindings are necessarily included and they are specially provided for elsewhere in paragraph 339."

There is no substantial dispute as to the correctness of the findings of the Board of General Appraisers that

the goods in question were generally known in the whole-sale trade of the United States at and prior to July 24, 1897, as "featherstitch braids," and at such period that designation "was the only general commercial name under which the goods were known in the trade and commerce of this country." That the tariff act of 1897 was drafted and was adopted by Congress in the light of the then fixed practice of the Government to assess such articles as "braids," irrespective of the subsidiary names which may have been applied by some who used the articles or without regard to some of the special uses of which they were susceptible of being put is not open to reasonable contention. This being the case, we are unable to conclude that Congress, knowing the commercial as well as the tariff designation of the articles, reëmployed the term braids in the act of 1897, and yet intended that some of the articles embraced within the commercial designation should be taken out of that designation and treated for the purpose of assessment of duty as being that which they were not, because they possessed features of utility as well as ornamentation.

When the contentions which had arisen concerning the dutiable character of the articles under the act of 1890 are taken into view and the claims there made by the importers as to their nature and character for the purpose of subjecting them to a lower duty are borne in mind, we think the shifting of braids from the lower duty of the notions schedule to the higher duty of the trimmings schedule, without any change of phraseology to indicate that it was the purpose to depart from the settled commercial meaning of the word braids, plainly manifested the purpose of Congress to accept that designation and make it applicable, and hence to subject the articles, under their accepted designation, to the higher duty placed upon the articles embraced in the schedule to which braids were transferred. Any other view would render

necessary the conclusion that it was the intention of Congress in using the word braids not to adhere to the then well-settled commercial and tariff meaning of the term, but to use the word in a sense different from that which was accepted for the purpose of renewing a conflict as to the proper meaning of the word, which had been flagrant under the prior act. While these conclusions need no reinforcement, their soundness is additionally and cogently sustained by the construction given to the act upon its adoption and the consequent administrative enforcement of the same which prevailed without question for so considerable a time.

*The decree of the Circuit Court of Appeals is reversed, and that of the Circuit Court is affirmed; and the case is remanded to the District Court of the United States for the Southern District of New York.*