ULMANN & Co. *v.* UNITED STATES (No. 923).[1]

1. CORD DEFINED.
    A cord is a string or small rope composed or several strands twisted together.

2. UNTWISTED COTTON CORD A MANUFACTURE OF COTTON.
    The uncontradicted testimony is to the effect that the coronation cord of the importation has not been twisted in any way and accordingly it does not come within the meaning of "cords," as that term is used in paragraph 349, tariff act of 1909. The goods were dutiable under paragraph 332 of that act as a manufacture of cotton.—T. D. 17550 of December 22, 1896, and T. D. 19156 of March 25, 1898, distinguished.

United States Court of Customs Appeals, April 18, 1913.

APPEAL from Board of United States General Appraisers, Abstract 28343 (T. D. 32455).
    [Reversed.]

*Walter Evans Hampton* for appellant.
*William L. Wemple,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise in this case is designated by the term "coronation cord." The special report of the appraiser states that it "consists

---

[1] Reported in T. D 33363 (24 Treas. Dec., 576).

of cotton cord used for trimming purposes known as coronation cord." It was assessed for duty as cotton cord at 60 per cent ad valorem under paragraph 349 of the tariff act of 1909, the material part of which for the purposes of this case is as follows:

349. * * * Trimmings, braids, * * * bands, bandings, * * * cords, * * *; all of the foregoing, composed wholly or in chief value of cotton, flax, or other vegetable fiber, * * * and not elsewhere specially provided for in this section, sixty per centum ad valorem; * * *.

The importers protested, claiming the merchandise was properly dutiable under paragraph 332 of the same act, the material part of which reads:

332. * * * And all manufactures of cotton, or of which cotton is the component material of chief value, not specially provided for in this section, forty-five per centum ad valorem.

The Board of General Appraisers, upon hearing the protest, overruled the same, whereupon the importers appealed to this court.

It is assumed by both parties that the merchandise is composed of cotton fiber; therefore its component material brings it within either of the quoted paragraphs.

The board, after stating the issue and the action of the collector, said:

The legal presumption of the correctness of the classification and collection of duty attaches to the action of the collector. The protestants allege that the article under consideration is a manufacture of cotton not specially provided for, and not a cord, * * * and the burden is on them to prove this fact. * * * A careful reading and examination of the testimony in this case does not convince us that the protestants have shown by a preponderance of proof that the article in question is not a cord.

At the hearing before the board the Government introduced some evidence which might have been understood as tending to prove that this "coronation cord" was within the commercial understanding of the term "cords" as used in paragraph 349, but in his brief and argument here the Assistant Attorney General states that this evidence was not introduced for that purpose and is not now claimed to have that effect. The board does not base its conclusion upon any consideration of commercial designation, and we therefore assume that issue is not in this case.

The importers contend that they have established by the evidence that this "coronation cord" is not a cord within the common meaning of that word. They cite various lexicographic authorities to the effect that the word "cord," in the common understanding, is "a string or small rope composed of several strands twisted together," and the correctness of this definition is not challenged by the Government.

The undisputed evidence in this case, disregarding for the moment the official exhibit, shows that this coronation cord is made by

taking, as its center or core, one or two small threads of mercerized cotton, then spinning around this center other threads in such a manner that, when finished, the completed article resembles a string or cord, having upon the same at regular intervals (they are about one-half inch apart on the official exhibit) uniform shaped, small, elliptical or oval lumps, about one-half inch in their longest diameter, through the center of which passes the core threads. The spinning really consists of winding around, at right angles to the diameter of the core, threads which increase its diameter and constitute the elliptical lumps. The importers' evidence, which was not contradicted, was that in this process the article was not twisted in any way. A careful physical examination of the official sample shows that apparently some 8 or 12 minute threads are so spun around the center or core, although we are not clear that the article was not produced by spinning one or more threads back and forth around this center, as was testified by one of the importers' witnesses. This core or center, in the case of the official sample, is composed of two small threads, each of which in turn is composed of several minute twisted fibers, but the two core threads do not seem to be twisted upon each other.

The Government makes no claim that these core threads, either separately or together, constitute a cord within the common meaning of that term, and we are of opinion that their diameter is so small that considered singly or together they are not of the diameter size which, in common understanding, is required to constitute a cord. There is no evidence upon the question, but we assume that the spinning of these small threads around the core or center does not perceptibly increase the linear strength thereof. The only purpose for which this coronation cord is used, as disclosed by the evidence, was stated by one of the importers' witnesses as follows:

It is used for embroidery purposes. * * * It is stitched on goods to make flowers, leaves, and stems.

This witness in connection with his testimony produced three illustrative exhibits, which were received in evidence and which clearly corroborated his testimony as to that use of the coronation cord.

The Government contends that the status of this coronation cord for tariff purposes has been settled by two decisions of the Board of General Appraisers. The first of these (T. D. 17750, decided in 1896) involved paragraph 263 of the act of 1894, which provided for cords and other articles made of cotton or other vegetable fiber, and paragraph 264 of the same act, which related to all manufactures of cotton not otherwise specially provided for. The decision of the board in that case stated that the merchandise was shown by the evidence to be a cotton cord used in appliquéd work; that it was commercially known as a coronation braid or cord, and the board held it was dutiable as assessed under paragraph 263.

The next and only other case referred to by the Government is T. D. 19156, decided in 1898, where the board held the merchandise was similar in all respects to that covered by its decision last referred to. The merchandise in this last case had been assessed as cotton braids under paragraph 339 of the act of 1897, but the board said:

An examination of the sample shows that the article is a cord and not a braid.

Paragraph 339 of the act of 1897 contained no provisions for cords eo nomine and the board therefore held it dutiable under paragraph 320 of that act which provided, among other things, for cords made of cotton or other vegetable fiber.

In neither of these opinions by the board is the common meaning of the word "cord" at all discussed.

We are of opinion that the common meaning of the word "cord" is in substance that embodied in the definition hereinbefore given.

There is no proof in the case at bar as to the administrative practice in the assessment of duty upon merchandise like that here, nor does it satisfactorily appear that the articles before this court are identical with the merchandise which was before the board in each of the two cases referred to. The board in the case at bar does not state that the coronation cord is like that involved in the other two cases, nor does it cite the same as authorities for its decision here. Its judgment went against the importer, upon the ground that he had failed to show that the merchandise was not a cord.

The common meaning of the word "cord" being found as above indicated, we think the importer has shown that the articles here are not cords within such meaning.

To sustain the judgment below the Government relies upon the proposition that, as coronation cords were by the cited decisions held to be cotton cords under paragraphs therein invoked, it must be presumed, because Congress thereafter employed the word "cords" without any change of phraseology relating thereto in the acts of 1897 and 1909, that it adopted the construction put by the board upon that word in the respective paragraphs referred to in the acts of 1894 and 1897, and therefore that it describes the merchandise here.

There would be force in this contention if it affirmatively appeared here that the coronation cords under consideration in those two decisions were substantially identical with these before us, and this claim would be reenforced if it were shown that the uniform administrative practice had been since those two board decisions to assess as cords articles that in form, size, and construction were like those involved in this case. Neither of these conditions is, however, shown to exist.

For aught we know the coronation cords involved in those two board decisions may have been in their external physical appearances unlike these before us or may have been of different construction.

Again, if the board in the cited cases had considered the common meaning of the word "cord" and thereupon reached its conclusion, we might incline to give greater weight thereto as precedents, but it did

not, as far as the published decisions in the two cases show, do this, and therefore those cases are authority, if at all, only so far as relates to merchandise substantially identical with that there passed upon.

We reserve any expression of opinion as to whether or not the merchandise might be held dutiable as "trimmings" under paragraph 349, because no such issue was raised before the board and is not here.

The present question is whether these coronation cords are within the common meaning of the word "cords" as used in paragraph 349, and upon that issue we think, upon the facts in this case, the importer is entitled to prevail.

The judgment of the Board of General Appraisers is *reversed* and the protest claim above considered is sustained.