## ULMANN & Co. *v.* UNITED STATES (No. 1342).[1]

CORDS IN PARAGRAPH 349, TARIFF ACT OF 1909.

In view of former decisions, taken together with subsequent practice and legislation as well, it will be assumed the Congress used the word "cord" in paragraph 349, tariff act of 1909, with the same meaning that had been attached to it by cited adjudications and the executive practice conforming thereto.

### United States Court of Customs Appeals, June 1, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7527 (T. D. 34089). [Affirmed.]

*Walter Evans Hampton* for appellants.

*William L. Wemple*, Assistant Attorney General (*Thomas J. Doherty*, special attorney, of counsel; *Martin T. Baldwin*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case is identical in character with that which was before the court in the case of Ulmann & Co. *v.* United States (4 Ct. Cust. Appls., 77; T. D. 33363), and the testimony taken in that case is incorporated in the present record.

The article comes in running lengths, having a lineal core or center composed of cotton threads around which mercerized cotton threads are spun in such a manner as to form at regular intervals small oval lumps about one-half inch in length.

The importations in question were invoiced as "coronation" and were entered under that name by the importers.

The appraiser reported that the merchandise was "coronation cord composed of cotton," and return for duty was made as cotton cord at the rate of 60 per cent ad valorem under the *eo nomine* provision for cord composed of cotton appearing in paragraph 349 of the act of 1909. Duty was assessed accordingly.

The importers filed their protest against the assessment, claiming duty upon the merchandise at 45 per cent ad valorem as manufactures of cotton not specially provided for under paragraph 332 of the same act.

The protest was submitted upon testimony to the Board of General Appraisers and the same was overruled. The importers now appear from that decision.

---

[1] Reported in T. D. 34551 (26 Treas. Dec., 1001).

The following is a copy of the relevant part of paragraph 349 of the act of 1909:

349. * * * Nets, nettings, veils, veilings, neck rufflings, ruchings, tuckings, flutings, quillings, embroideries, trimmings, braids, featherstitch braids, edgings, insertings, flouncings, galloons, gorings, bands, bandings, belts, beltings, bindings, cords, ornaments, ribbons, tapes, webs, and webbings; * * * all of the foregoing, composed wholly or in chief value of cotton, * * * sixty per centum ad valorem; * * *.

As appears from the foregoing recital the controlling question in the case is whether the importations in question are dutiable as cotton cords, for if they are not dutiable as cords they would be dutiable as manufactures of cotton not specially provided for.

In the former Ulmann case, *supra*, the Government contended that the articles in question were cords within the common meaning of that term, no claim of commercial designation being then presented to the court. It was furthermore claimed by the Government in that case that the status of the article in question had been settled to this effect by two decisions of the Board of General Appraisers under the tariff acts of 1894 and 1897, respectively, together with the administrative practice founded thereon, and the implied adoption thereof by Congress by the use of the same word, "cords," in the same manner at the revision of 1909.

In the decision of the case, however, the court held that the article in question, because of its peculiar construction, was not cord within the common application of that term; and as to the Government's claim concerning the two earlier board decisions the court held that there was no proof in the record to establish the identity of the present merchandise with the goods passed upon by the board in those cases, and consequently that those decisions could have no weight in the case.

Upon that record, therefore, the court held against the assessment of the merchandise as cords under paragraph 349. In the course of the decision Judge Barber, speaking for the court, said:

At the hearing before the board the Government introduced some evidence which might have been understood as tending to prove that this "coronation cord" was within the commercial understanding of the term "cords" as used in paragraph 349, but in his brief and argument here the Assistant Attorney General states that this evidence was not introduced for that purpose and is not now claimed to have that effect. The board does not base its conclusion upon any consideration of commercial designation, and we therefore assume that issue is not in this case.

*　　　*　　　*　　　*　　　*　　　*　　　*

There is no proof in the case at bar as to the administrative practice in the assessment of duty upon merchandise like that here, nor does it satisfactorily appear that the articles before this court are identical with the merchandise which was before the court in each of the two cases referred to. The board in the case at bar does not state that the coronation cord is like that involved in the other two cases, nor does it cite the same as authorities for its decision here. Its judgment went against the importer upon the ground that he had failed to show that the merchandise was not a cord.

The common meaning of the word "cord" being found as above indicated, we think the importer has shown that the articles here are not cords within such meaning.

To sustain the judgment below the Government relies upon the proposition that, as coronation cords were by the cited decisions held to be cotton cords under paragraphs therein invoked, it must be presumed, because Congress thereafter employed the word "cords" without any change of phraseology relating thereto in the acts of 1897 and 1909, that it adopted the construction put by the board upon that word in the respective paragraphs referred to in the acts of 1894 and 1897, and therefore that it describes the merchandise here.

There would be force in this contention if it affirmatively appeared here that the coronation cords under consideration in those two decisions were substantially identical with these before us, and this claim would be reinforced if it were shown that the uniform administrative practice had been since those two board decisions to assess as cords articles that in form, size, and construction were like those involved in this case. Neither of these conditions is, however, shown to exist.

For aught we know the coronation cords involved in those two board decisions may have been in their external physical appearances unlike these before us or may have been of different construction.

In the present case the Government presents three contentions to the court. First, it urges the court to reconsider its former ruling that the article in question is not cord within the common meaning of that term; second, it establishes by sufficient proofs that the merchandise which was before the board in the two cases above referred to was identical in character with that now at bar, and that those decisions were followed in practice by the executive department from about the year 1898 up to the enactment of the act of 1909 and since; and, third, it submits testimony tending to establish a commercial designation of the article as cord (the importers submitting opposing testimony upon this subject).

In answer to the Government's application for a reconsideration of the court's decision concerning the common or ordinary meaning of the word "cord" it may be said that upon such a reconsideration the court is content with its former decision. In that decision the reasons for the conclusion reached are fully set out and need not now be repeated.

The two other branches of the Government's present case, however, namely, the effect of the former decisions taken together with subsequent practice and legislation and the claim of commercial designation, are now for the first time brought before the court. In the present case the board has approved the claim of the Government relating to the force and effect of the former decisions, together with the subsequent administrative procedure and the implied legislative approval thereof, and has also found upon the testimony in favor of the claim of commercial designation.

In respect to the first claim of the Government it may be said that goods identical in character with those at bar were before the Board of General Appraisers in the case of T. Buettner & Co., reported on December 22, 1896, as T. D. 17750. The case arose under the tariff

act of 1894, and the issue was precisely the same as that now before the court, namely, whether this identical article was dutiable at 45 per cent ad valorem under the *eo nomine* classification of cotton "cord" or at 35 per cent ad valorem as "manufactures of cotton not specially provided for." The following is the decision copied in full:

Opinion by HAM, *General Appraiser:*

The merchandise in this case consists of coronation cords made of cotton, assessed for duty at 45 per cent ad valorem under paragraph 263, act of August 28, 1894, but claimed to be entitled to entry at 35 per cent ad valorem under paragraph 264 of said act. The case was heard at Chicago December 1, 1896, where the appellant appeared and testified in his own behalf.

The evidence, which includes a verified sample of the merchandise, shows that the article in controversy is a cotton cord used in appliqué work, and that it is known commercially as coronation braid or cord. The label found in the record has printed upon it the words "coronation braid" and the article is invoiced as "coronation cord."

The protest seems to have no merit, and is, therefore, overruled, and the collector's decision is affirmed.

Afterwards in the case of Chas. D. Stone & Co., reported on March 25, 1898, as T. D. 19156, another issue came before the board under the tariff act of 1897 concerning goods of identical character. The question raised in the case was whether the goods were dutiable under that act at 60 per cent ad valorem as cotton braids or as 45 per cent ad valorem as cotton cord. The board again held the articles to be dutiable as cotton cord. The following is a copy of the decision:

Opinion by HAM, *General Appraiser:* The merchandise in this case consists of cotton coronation cords, assessed for duty at 60 per cent ad valorem under paragraph 339, tariff act of July 24, 1897, as cotton braids, but claimed to be entitled to entry at 45 per cent ad valorem under paragraph 330 of said act.

The case presented here is similar to that covered by board decision *in re* Buettner, G. A. 3736, rendered December 22, 1896, under the tariff act of 1894. In his special report the appraiser states that the merchandise in question is cotton coronation cords (or braids) "similar in all respects to the merchandise subject of G. A. 3736;" but an examination of the sample shows that the article is a cord and not a braid. It therefore falls directly within the claim of the protest, namely, under paragraph 320, which provides for "cords, * * * made of cotton or other vegetable fiber, whether composed in part of india rubber or otherwise, and not embroidered by hand or machinery."

The protest is sustained, and the decision of the collector reversed, with an appropriate order of reliquidation.

It will be observed that the first of the foregoing decisions was favorable to the Government, whereas the second was favorable to the importers. The appellants contend that the latter case is entitled to little weight as an authority in favor of the cord classification because of the fact that under the tariff act of 1897 "cotton cords" and "manufactures of cotton, not specially provided for" were dutiable at the same rate, to wit, 45 per cent ad valorem, and conse-

quently the importers could have no motive in distinguishing between these two classifications. This argument, however, is not applicable to the circumstances of the case. For in that case the merchandise had been assessed at 60 per cent ad valorem as cotton braids, and the importers were objecting to the assessment. It was open to the importers to base their protest upon the claim that the goods were "cotton cords," or upon the claim that they were "manufactures of cotton, not specially provided for," both of which were dutiable at 45 per cent ad valorem. As between these two classifications bearing equal duty the importers based their protest upon the claim that the article in question was cotton cord. In this instance the importers could have had no motive except to select the stronger of the two claims; therefore their adoption of the claim that the article was cotton cord was all the more significant. The board sustained this claim, for had not the board found the article to be cotton cord the protest would have been overruled.

It seems that the Government afterwards made up another case for the trial of the same issue under the tariff act of 1897, which met with the same decision at the hands of the board, upon the authority of the case last above cited. Abstract 3554 (T. D. 25735). It appears however, that even before the board's decision in the last case the administrative department had informally acquiesced in the former decision, and from that time on regularly assessed the article in question as cord. The proof of this fact appears in the testimony of the witnesses Wallace, Hadley, Flateau, Appleyard, and Beller, and indeed does not seem to be denied by the appellants. The publication of these decisions and the executive practice founded thereon possess an importance which is independent of any question concerning the correctness of the decisions upon the records then presented to the board or the completeness of the respective records upon the question involved.

Upon these facts it should be assumed that Congress used the word "cord" in the tariff revision of 1909 with the same meaning as that given it by the adjudications above cited and the executive practice had in conformity therewith. United States *v.* Baruch (223 U. S., 191).

In accordance with the foregoing conclusion the court is convinced that the decision of the board should be affirmed. This conclusion makes it unnecessary to enter upon a discussion of the subject of commercial designation, since in any view of that subject the decision must be the same.

*Affirmed.*