## BARDWELL v. PETTY et ux.

(Court of Appeals of District of Columbia. Submitted October 23, 1922. Decided February 5, 1923.)

### No. 3789.

1. Statutes ⬅225¾—Amendment without changing provision previously construed justifies assumption construction was approved by Congress.

The fact that Act Cong. June 19, 1878, §§ 4, 5, were amended many years after they had been construed as not imposing on the owner of a dog liability for an injury caused by the dog, unless he knew or was charged with knowledge of its vicious propensities, by Act June 30, 1902, without changing the particular provisions construed, indicates that Congress, which is presumed to know the judicial interpretation put on its legislation, approved the construction.

2. Courts ⬅90(4)—Statutes ⬅219—Legislation, once judicially or administratively construed, if left unchanged for long time after construction, not construed differently.

Legislation once judicially, or even administratively, construed, if left for a long period of time unchanged, is presumed to have been construed in accordance with legislative intent, and the construction will be followed, under the rule of stare decisis, without re-examination of the reasoning.

Appeal from the Supreme Court of the District of Columbia.

Action by Elizabeth Leavitt Bardwell, by her next friend, Halsey W. Bardwell, against James Cary Petty and wife. Judgment for defendants, and plaintiff appeals. Affirmed.

P. B. Morehouse, of Washington, D. C., for appellant.

S. McC. Hawken and G. F. Havell, both of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. A dog, purchased, recorded, licensed, and tagged by James C. Petty, for his wife, Bernice Petty, bit Elizabeth Leavitt Bardwell, two years of age, on the right cheek, thereby causing a wound and scar, which permanently disfigured the face of the child. Elizabeth Leavitt Bardwell, by her next friend, commenced suit to recover $25,000 for the damage caused, and in her declaration alleged, among other things, that the defendants willfully kept said dog, knowing that said dog was used and accustomed to bite mankind, and to be of vicious and mischievous propensities. The defendants pleaded that they were not guilty in the manner and form alleged in the declaration, and, issue having been joined, the case went to trial before the court and a jury duly impaneled to try the same.

The evidence submitted on the part of the plaintiff established that the plaintiff was bitten while in the apartment of the defendants, and that she was disfigured as alleged in the declaration. No evidence was introduced by the plaintiff. showing or tending to show that the dog

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was vicious, mischievous, or possessed of propensities which might reasonably be expected to result in injury to human beings.

The evidence on the part of the defendants was to the effect that the baby was brought to their apartment by her mother, to be taken care of by the mother of one of the defendants; that at the time of the injury the plaintiff was on the floor playing with the dog and a coat hanger; that no one saw the dog bite the plaintiff, and that immediately after the injury the dog was found beside the baby peacefully wagging his tail.

The parties to the action having completed the presentation of evidence in support of their respective contentions, the plaintiff requested the court to instruct the jury that by act of Congress approved June 19, 1878 (20 Stat. 173):

"Any person owning a dog recorded in the office of the tax collector of the District of Columbia, shall be liable in a civil action for any damage done by said dog to the full amount of the injury inflicted. * * * Plaintiff is entitled to a verdict against the defendants without proof of any knowledge on their part of the dog's alleged vicious tendencies toward mankind: Provided you are satisfied from a preponderance of the evidence that the defendants owned the dog, that it was so recorded, and that it did the injury complained of."

The court refused to give that instruction, and according to the bill of exceptions charged the jury as to the "common law on the doctrine of scienter." The instruction as given is not disclosed in the record, but for the purpose of this case we assume that it was to the effect that the owner is not answerable for the bite of a dog, unless he keeps the animal knowing, or charged with knowing, that the dog is vicious, mischievous, or possessed of propensities which may be reasonably expected to result in injury to human beings.

The plaintiff noted an exception to the refusal to give the requested instruction, and an exception to the instruction applying to the case the common-law doctrine of liability. The jury rendered a verdict for the defendants, and, judgment having been entered thereon, the plaintiff appealed. In support of the appeal the appellant argues that sections 4 and 5 of the Act of June 19, 1878 (20 Stat. 173), changed the common-law liability of owners of dogs in the District of Columbia, and made said owners liable in a civil action for any damage done by such animals, regardless of their characteristics, and regardless of whether an owner knew or could know that his dog was vicious, mischievous, or possessed of propensities likely to cause injury or damage.

[1] Unfortunately for that contention, however, it was held in Murphy v. Preston, 5 Mackey (16 D. C.) 514, 518, et seq., that, notwithstanding the act of 1878, the owner was not liable for the conduct of his dog, unless he knew or was charged with knowledge of its vicious, mischievous, or other propensities likely to cause injury or damage to persons or property. That interpretation was made in 1887, and for 35 years has stood as the law which determines the liability of owners of dogs in this jurisdiction. Moreover, on June 30, 1902 (32 Stat. 547), the Congress, which is presumed to know the judicial interpretation put upon its legislation, deliberately amended its Act of June 19, 1878, but did not amend away or modify in any particular the judicial

interpretation given to the earlier act in Murphy v. Preston, supra. Congress having the opportunity to meet the decision of the court in Murphy v. Preston, and having declined to do so, we must assume that that decision met with legislative approval.

[2] Legislation once judicially, or even administratively, interpreted, if left for a long period of time unchanged, unmodified, or unamended, may well justify the conclusion that the judicial or administrative interpretation was in accord, and not at variance, with the legislative intention. Stuart v. Laird, 5 U. S. (1 Cranch) 298, 308, 2 L. Ed. 115; United States v. Midwest Oil Co., 236 U. S. 469, 473, 35 Sup. Ct. 309, 59 L. Ed. 641; United States v. Baruch, 223 U. S. 191, 200, 32 Sup. Ct. 306, 56 L. Ed. 399; Edwards v. Darby, 25 U. S. (12 Wheat.) 206, 209, 6 L. Ed. 603; Hahn v. United States, 107 U. S. 402, 406, 2 Sup. Ct. 494, 27 L. Ed. 527; United States v. Philbrick, 120 U. S. 52, 59, 7 Sup. Ct. 413, 30 L. Ed. 559; Robertson v. Downing, 127 U. S. 607, 613, 8 Sup. Ct. 1328, 32 L. Ed. 269; United States v. Healey, 160 U. S. 136, 141, 16 Sup. Ct. 247, 40 L. Ed. 369; United States v. Hermanos, 209 U. S. 337, 339, 28 Sup. Ct. 532, 52 L. Ed. 821; Komada v. United States, 215 U. S. 392, 396, 30 Sup. Ct. 136, 54 L. Ed. 249.

The construction given to the act of 1878 in Murphy v. Preston, standing as it has for so many years unmodified and unreversed, should not be changed at this late day, and must be considered as stare decisis. To hold otherwise would leave little or no application for a very sound, wise, and meritorious legal principle designed to settle definitely questions of law, and to protect the rights of citizens who, in the acquisition of property and the assumption of responsibilities, have accommodated themselves to the law as interpreted.

Certainty as to the law is of far more importance to the citizen than the reasoning which established its interpretation. In fact, if the reasoning measures the binding force of an interpretation, then every change in the personnel of appellate tribunals of last resort must result in breeding litigation, in disturbing rights acquired on the faith of judicial interpretation, and last, but not least, in imposing responsibilities which would never have been assumed, if judicial construction and definitions came to nothing more than a mere expression of temporary personal opinion.

The judgment is affirmed, with costs.

Affirmed.