(C. D. 764)

Strohmeyer & Arpe Co. *v.* United States

United States Customs Court, First Division

(Decided May 5, 1943)

*Strauss & Hedges; Barnes, Richardson & Colburn* (*Joseph Schwartz of counsel*) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph B. Brady* and *Richard F. Weeks*, special attorneys), for the defendant.

Before OLIVER, WALKER, and COLE, Judges; OLIVER, J., dissenting

WALKER, Judge:   This is a suit for the recovery of money paid as customs duties on an importation of merchandise described. on the invoice as bleached carnauba wax.   Duty was assessed thereon at the rate of 20 per centum ad valorem under the provision in paragraph 1536 of the Tariff Act of 1930 for manufactures of wax, not specially provided for.   It is claimed to be entitled to free entry under the provision in paragraph 1796 of the same act for—

Wax: Animal, vegetable, or mineral, not specially provided for.       •

The record indicates that the merchandise consists of a mixture of 13 per centum of carnauba wax, which is a vegetable wax, and 87 per centum of paraffin, which is considered to be a mineral wax, made, apparently, by melting the two waxes and blending them.   As the result of such mixture, the constants of the new material differ from

those of either of the waxes which make it up. This is illustrated by a tabulation of the constants as given by two of the witnesses called:

|  | Importation | Carnauba | Paraffin |
|---|---|---|---|
| Acid value | 2½ | 4 to 8 | 0 |
| Saponification value | 10. 7 | 78 to 88 | 0 |
| Iodine value | . 94 | 12.5 to 15 | 0 |
| Melting point | 70. 2°C. | 85°C. | 26 to 75°C. |
| Unsaponifiable matter | 94. 4% | 55% | 100% |

In addition, the record shows that the merchandise at bar is harder than paraffin but not as hard as carnauba; it is less crystalline than paraffin but not as crystalline as carnauba; it has a waxier feel than paraffin but does not in any way resemble the feel of carnauba, and it is almost the same color as paraffin and is lighter in color than carnauba.

It is apparent from the foregoing that while the constants and physical characteristics of the merchandise at bar are different from those of either carnauba or paraffin wax standing alone, no new, independent characteristic was added by the mixture nor are any of the constants and characteristics of the merchandise at bar outside the extremes of the two component waxes, that is to say, the constants and characteristics of the merchandise at bar lie between those of carnauba and paraffin.

We think it fairly appears from the record that merchandise such as that at bar is made for the purpose of obtaining, in a relatively cheap product, a combination having desirable properties of waxes which are either scarce or expensive. Carnauba, it appears, is a relatively expensive wax; paraffin is relatively cheap. The merchandise at bar, when compared with carnauba wax, is inferior thereto, but when compared with paraffin, is superior. It has acquired a suitability for uses which neither paraffin nor carnauba alone possesses, its chief advantages over paraffin being higher dielectric strength for use in electrical work and greater water-repellent properties. Its chief advantage over carnauba appears to be its relatively low cost.

From the foregoing it is apparent that while the merchandise in issue has, by the blending of its component waxes, acquired suitability for new uses it is nevertheless still a wax material as distinguished from a manufacture of wax, and under the authority of *United States* v. *General Dyestuff Corporation*, 29 C. C. P. A. 53, C. A. D. 170, the collector's classification under paragraph 1536 must be held to be erroneous.

On the question of whether the merchandise is entitled to classification under the free-list paragraph 1796 as claimed, we note that plaintiff relies on the case of *United States* v. *Charles Morningstar & Co.*, T. D. 29121, a decision of the Circuit Court for the Southern

District of New York, which affirmed a decision of the Board of United States General Appraisers (now United States Customs Court), reported in T. D. 28220, and which was itself affirmed in *Same* v. *Same*, 168 Fed. 541, T. D. 29651. That case related to merchandise apparently consisting of a combination of carnauba wax and paraffin and it was held that such combination was entitled to free entry under the provisions of paragraph 695 of the Tariff Act of 1897, which read—

Wax, Vegetable or mineral.

and was not dutiable, as classified by the collector, under the catch-all provision for nonenumerated manufactured articles.

It is not clear from the decisions rendered in the *Morningstar* case whether the merchandise actually consisted of bleached carnauba wax, that is to say, carnauba wax which had only had sufficient paraffin added to bleach it, as contrasted with the merchandise at bar which consists of a comparatively small amount of carnauba wax and a large amount of paraffin. Nevertheless, taking the decisions as intending to hold that a mixture of vegetable and mineral waxes was entitled to classification under a provision for "Wax, vegetable or mineral," we must decline to consider the decisions in the *Morningstar* case to be controlling of the issue at bar.

It will be noted that the provision under which plaintiff claims, namely, paragraph 1796 of the present tariff act, provides for "Wax: Animal, vegetable, or mineral, not specially provided for." It provides for the three classes of wax in the disjunctive. The article at bar is neither animal, vegetable, nor mineral wax, it is a combination of two of these, to wit, vegetable and mineral. To classify it under paragraph 1796 two things must be done: First, "or" must be read as "and/or" and, second, another "and/or" must be inserted between "animal" and "vegetable," making the provision applicable to any of the three classes of waxes alone or to any combination of them.

There have been many cases involving the construction of statutes wherein it was held that the term "and" was to be given the meaning of "or" and vice versa. Many of these are cited in the decision of the majority of the Court of Customs and Patent Appeals in the case of *Doughten Seed Co. et al.* v. *United States*, 24 C. C. P. A. 258, T. D. 48686, and we think the following conclusion therefrom, as written by Bland, J., correctly expresses the rule:

Running through all the decisions involving issues similar to the one at bar, there is found the well-settled principle that courts may construe the words "and" and "or" to have a meaning different from that arrived at by a strict grammatical construction, if by so doing the different provisions of the paragraph or act can be harmonized, and anomalous results avoided. Of course, in considering language used in a tariff act, there need be no construction if there exists no ambiguity,

but if anomalous results flow from the language when given its ordinary grammatical meaning, and if such construction throws different parts of the paragraph or act out of harmony, its use unquestionably has produced ambiguity and uncertainty to the extent and degree which makes applicable the rule that courts may ignore the technical grammatical meaning and ascertain the real intent of the legislature.

There is no ambiguity in the language of paragraph 1796, nor does any anomaly or disharmony flow from giving it its ordinary grammatical meaning. Under that meaning the mixture or combination at bar is excluded from the provisions of the paragraph, and we so hold.

We note it is suggested in the decision of District Judge Platt reported in T. D. 29121, *supra*, that a commodity composed of two materials that are on the free list is for that reason itself free of duty. With due respect to the learned judge, we think this reasoning is erroneous. In *Nonnabo Chemical Co.* v. *United States*, T. D. 37285, the merchandise involved consisted of a mixture of nitric and sulphuric acids, each of which was covered by the free-list provision for acids. In holding that the mixture was subject to duty under the provision for chemical mixtures as against a claim for free entry based on the above reasoning, the late Judge Brown of this court pointed out that "the mixture, forming a distinctly different customs classification, removes this article from the benefits of the free-list provision" and that the mixture was of substantial proportions and was "used in the form of the mixture and in the proportions as imported for manufacturing purposes." The foregoing applies with equal force to the situation in the case at bar.

Paraffin is provided for *eo nomine* in paragraph 1733 of the Tariff Act of 1930, and we note that from the Tariff Act of 1897 down to and including the existing tariff law Congress has consistently differentiated between paraffin and mineral waxes by enacting separate provisions for each. If, therefore, the rule of the *Morningstar* case were to be accepted as sound and a commodity composed of two free materials must be accorded free treatment, it would appear that claim should have been made under *both* paragraph 1733, providing for paraffin, and paragraph 1796, providing for vegetable wax, which includes carnauba wax. This was not done in the present case.

We are satisfied that the proper classification of the merchandise at bar is under the provision in paragraph 1558 of the Tariff Act of 1930 for "articles manufactured, in whole or in part, not specially provided for." It is a wax material which has resulted from a change in the condition of its component materials by reason of a process, namely mixing or blending, which may be termed a manufacturing process. That claim not having been made in the protest, judgment will issue overruling the same without affirming the action of the collector.

### CONCURRING OPINION

COLE, Judge: This case reaches me after preparation of the initial opinion by Judge Walker and a dissenting opinion by Judge Oliver. While I concur in the judgment of my associate, Judge Walker, reasons different from those presented in his opinion persuade me to do so.

It is clear to me that the imported commodity is not a wax as contemplated by paragraph 1796, which provides for "Wax: Animal, vegetable, or mineral, not specially provided for," as claimed by plaintiff. Nor is it a manufacture of wax, as classified by the collector.

Admittedly, the imported merchandise is 87 per centum paraffin, with only 13 per centum carnauba wax mixed therewith. The blending of the two substances has produced a new product with a different consistency and adaptable to uses not applicable to paraffin, as such. If this were not the case, it is inescapable that the proper classification of the merchandise would be under paragraph 1733, reading as follows:

Oils, mineral: Petroleum, crude, fuel, or refined, and all distillates obtained from petroleum, including kerosene, benzine, naphtha, gasoline, *paraffin*, and paraffin oil, not specially provided for. [Italics mine.]

By reason of the foregoing, under no possible application of the law can the provision for waxes be invoked.

Further indication that Congress intended to distinguish, for tariff purposes, paraffin from the waxes included within paragraph 1796, is disclosed in the following excerpt, relating to waxes, contained in the Summary of Tariff Information, 1929 (vol. 2, pp. 2636–2637):

#### WAXES

Description and uses.—Beeswax is described under paragraph 1458 which provides for white bleached beeswax. The crude beeswax enters under paragraph 1693. The waxes of this paragraph are substances which in physical properties resemble beeswax and are mixtures of compounds containing carbon, hydrogen, and oxygen. Vegetable waxes are obtained from the fruit, leaves, or stems of many plants, a small number only being of commercial value. The principal vegetable waxes are carnauba, candelilla, Japan wax, myrtle or bayberry, and Cochin China or cay-cay. Chinese or insect wax, though classed as vegetable, is really an animal wax. The mineral waxes, *similar to paraffin (1633)*, come from natural bituminous substances; the most important are ceresin and montan. [Italics mine.]

The parenthetical "1633" in the above quotation refers to the prototype paragraph in the Tariff Act of 1922 to paragraph 1733, *supra*.

The Tariff Act of 1913 (paragraph 561) contained a provision for paraffin like that in the two paragraphs referred to of the subsequent acts. In the earlier Tariff Acts of 1909 (paragraph 645) and 1897 (paragraph 633), paraffin was provided for separately and exclusively as such. But throughout all of the legislation referred to, Congress enacted a separate provision in each of the said tariff acts for mineral waxes. The conclusion, therefore, is very definite that Congress has consistently differentiated between paraffin and mineral waxes, for

the purpose of tariff classification. Without such differentiation, the dictionary definitions, of either paraffin or wax, would support a classification of both thereunder.

The above observations, unfortunately, were omitted in the briefs of both parties as submitted, but apparently were taken into consideration by Judge Walker.

The merchandise in question results from a mixing operation, and being a manufacturing process, *Fujii Shoten* v. *United States*, 17 Ct. Cust. Appls. 79, T. D. 43362, the imported commodity is properly classifiable under paragraph 1558 as a nonenumerated manufactured article. I agree with this finding by Judge Walker.

Plaintiff relies principally, if not entirely, upon the case of *United States* v. *Charles Morningstar & Co.*, 168 Fed. 541, and likewise, this decision controls the reasoning of my colleague, Judge Oliver. This case, arising under the Tariff Act of 1897, was decided in 1909 on the theory that both paraffin and carnauba wax were provided for in paragraph 695 of the act of 1897, which read "Wax, vegetable or mineral." This construction I do not regard as accurate and cannot accept it as determinative of the issue now before us.

The same may be said of *Pure Milk Association et al.* v. *United States*, 72 Treas. Dec. 360, T. D. 49179, one of the cases mentioned in the dissenting opinion. Evidently, no consideration was given there to the provision for paraffin as set forth in paragraph 1733, *supra*, and accordingly the decision lacks the strength as an authority attributed to it.

The dissenting opinion places much reliance on *Adolphe Hurst & Co., Inc.* v. *United States*, 6 Cust. Ct. 364, C. D. 497, on the theory that the merchandise there involved was composed principally of paraffin, and that therefore paragraph 1796, providing for mineral wax, was broad enough to include such merchandise, the court construing that tariff provision as embracing all waxes from whatever source derived, not specially provided for. If this decision meant to decide that the principal component and controlling part of the merchandise therein involved was paraffin, as interpreted by the dissenting opinion, then it is certainly fair to assume from the court's conclusion therein that the provision for paraffin in paragraph 1733, *supra*, must be entirely ignored. Otherwise, the opinion contradicts itself.

### DISSENTING OPINION

OLIVER, Presiding Judge: I am constrained to dissent from the decision of my associates herein. I concur insofar as the decision holds that the product before the court is a wax and not a manufacture of wax and that the collector erred in assessing duty on it as such. I am of opinion, however, that this merchandise is properly entitled to entry free of duty as claimed by plaintiff herein.

The master rule of construction in customs litigation has ever been to interpret the intent of Congress (*United States* v. *Clay Adams Co.*, 20 C. C. P. A. 285/288, T. D. 46078). As far back as the Tariff Act of 1883, Congress had placed vegetable and mineral wax on the free list. Paragraph 592 of the Tariff Act of 1883 provided for "Vegetable and mineral wax." Thereafter and until the Tariff Act of 1922 "Wax, vegetable or mineral" had been specifically provided for in each succeeding tariff act until 1922. In the Tariff Act of 1922 the wax provision in the free list (paragraph 1693) was broadened by adding the provision for animal wax. The language in the Tariff Act of 1922 has been reenacted as paragraph 1796 of the Tariff Act of 1930, as "Wax: Animal, vegetable, or mineral." It thus appears that the Congress has for many years and through many successive tariff acts made clear its intent to admit into this country free of duty, waxes, whether they be of animal, vegetable, or mineral origin. The only issue presented by the case at bar is whether that clearly evidenced intent of Congress is to apply if two of these duty-free waxes are mixed together before importation.

This precise issue was before our court in the case of *Morningstar* v. *United States* (T. D. 28220, G. A. 6609), and the decision therein is relied upon by the plaintiff to support its protest herein. In that case the imported article was a mixture of paraffin and carnauba wax as in the case at bar. In the *Morningstar* case, *supra*, the Board of General Appraisers sustained plaintiff's claim to free entry (T. D. 28220). This decision was appealed to the United States Circuit Court for the Southern District of New York, which court affirmed the decision of the Board (T. D. 29121). The court there, speaking of the imported material which was a combination of carnauba wax and paraffin, said:

\* \* \*. Of course in the form in which we find them they are not the natural waxes, but *nothing new has been introduced.* Paragraph 695 does not restrict the "wax, vegetable or mineral," to a natural wax. It would be unjust to place this merchandise, which is inferior to pure carnauba wax, in a provision which calls for 20 per cent duty, when nothing has been done to the original free article except to treat it with another free article, and when it is clear that by such treatment no essential nonwax ingredient has been added to the merchandise. On the whole case the decision of the Board is sustained. [Italics mine.]

This decision of the circuit court was subsequently appealed to the circuit court of appeals whose decision affirming the lower court is reported in 168 Fed. Rep. 541. The court (per Curiam) said (p. 542):

The importation is known as "carnauba wax substitute"; carnauba wax being a vegetable wax. The government's chemist admits that, although the so-called mineral waxes are not regarded as waxes in the chemical sense, paraffin belongs to that group. Evidently Congress used the words "mineral wax" in their popular sense; otherwise, they would cover nothing. The article in question is compounded of carnauba wax and paraffin, and when completed is to all appear-

ance a waxy substance, used for the same purpose as are other waxes, and containing no animal wax. We concur with the board and the Circuit Court.

The decision is affirmed.

In my opinion this decision is directly controlling in the instant case. In both cases the waxes were on the free list, were mixed *with each other*, and no other materials were added. In fact, in the *Morningstar* case, *supra*, the resulting merchandise had even been given a new name "carnauba wax substitute."

There have been numerous decisions in our court holding that the dutiable status of articles of merchandise has frequently been changed by mixing or blending them into a new product, but they do not control in the case at bar.

In *L. S. Tainter* v. *United States*, 50 Treas. Dec. 331, T. D. 41814, a mineral wax to which stearic acid had been added was held to be dutiable as a nonenumerated manufactured article because it had been processed from its original condition and was therefore no longer a wax. In the case at bar the merchandise as imported was a wax.

In the *Nonnabo Chemical Co.* case (T. D. 37285, G. A. 8082), this court held a mixture of nitric and sulphuric acids, both of which were on the free list, to be properly dutiable under the tariff provision for "* * * all chemical and medicinal compounds, preparations, mixtures, and salts, and combinations thereof not specially provided for." The court there had before it two competing provisions. In the case at bar we are confronted with no such choice. We have no provision in the Tariff Act of 1930 for "compounds, preparations, or mixtures of waxes and combinations thereof."

In *United States* v. *General Dyestuff Corp.*, 29 C. C. P. A. 53, C. A. D. 170, the merchandise invoiced as "IG-WAX (Mineral Wax)" was montan wax which had been obtained from lignite or brown coal, bleached with chromic acid, and then reduced with iron powder and hydrogenated with a nickel catalyst, resulting in a hydrocarbon held to be a nonenumerated manufactured article. The resulting product was not, as in the case at bar, a simple mixture of two duty-free waxes.

In *Conron & Co.* v. *United States*, 8 Treas. Dec. 385 (T. D. 25646, G. A. 5805), the imported merchandise was a combination of sesame and peanut oils, either of which would be free of duty if imported separately. The combination was held dutiable as a combination of expressed oils which were specifically provided for in paragraph 3 of the Tariff Act of 1897, the act there under consideration. To the same effect and subject to the same decision was the combination of peanut oil and cottonseed and other oils in *Young & Kimball* v. *United States*, 8 Treas. Dec. 641, Abstract 3787.

On the other hand, in *Pure Milk Association et al.* v. *United States*, 72 Treas. Dec. 360, T. D. 49179, the imported merchandise was paraffin wax to which a small amount of coloring matter had been

added giving it the desired color (red) for the specific use of coating cheese. The court held that this process and the addition of the coloring matter did not change the dutiable status of the paraffin and overruled the decision of the collector that it was a manufacture in chief value of wax, holding it free of duty under paragraph 1796 of the Tariff Act of 1930.

In *Adolphe Hurst & Co., Inc.* v. *United States*, 6 Cust. Ct. 364, C. D. 497, the merchandise was an article composed of paraffin with a percentage of lime content in the form of calcium soap. The issue was between the provisions of paragraph 1536 of the Tariff Act of 1930 for:

> * * * manufactures of * * * wax, or of which these substances or any of them is the component material of chief value * * *.

and paragraph 1796 for:

> Wax: Animal, vegetable, or mineral * * *.

The court found the imported material, despite the calcium soap present, to be a wax. In considering whether the lime present was an impurity or was added, the court said (page 368):

> * * * both the opposing chemists agree that however the lime content came into the original wax it remained a wax. Therefore the presence of the lime content could not have constituted a process of manufacture that converted the wax into something else, namely, a manufacture of wax, as classified by the collector.

The court further said (page 368):

> * * * it seems perfectly clear that when the Congress phrased the language of the paragraph as it did:
>
> Wax: Animal, vegetable, or mineral, not specially provided for.
>
> the Congress used a common form of expression denoting the division of all mundane physical matter, and in so using that common form of expression the Congress used it as commonly understood, to be all-inclusive. The language which the Congress employed has exactly the same meaning as though the wording had been
>
> WAX: Not specially provided for, or
> ALL WAX; Not specially provided for, or
> ALL WAX; From whatever source derived, not specially provided for.
>
> It seems clear, therefore, that the estimated 10 per centum of calcium soap, the result of the lime content which is admittedly derived from limestone clearly brings it within the intent of Congress to include it in the mineral division, one of the divisions into which all physical matter is commonly divided.

The doctrine of legislative sanction of judicial interpretation is applicable here. The Congress is presumed to have been aware of the decision of the circuit court of appeals in the *Morningstar* case (1909), and by reenacting the free-wax provision without change in language in subsequent tariff acts (except to add animal wax in paragraph 1693 of the Tariff Act of 1922), is presumed to have ratified and approved the construction of the courts in the *Morningstar* case,

*supra*, holding that a mixture of two duty-free waxes does not alter their free status.

Paragraph 1796 of the Tariff Act of 1930 reads: "Wax: Animal, vegetable, or mineral, not specially provided for." It is true that the use of the word "or" under strict grammatical rules indicates a disjunctive intent. In view, however, of the legislative approval of the judicial interpretation given this same disjunctive construction in paragraph 695 of the Tariff Act of 1897 "Wax, vegetable or mineral" in the decision in the *Morningstar* case, *supra*, I feel that this is a case where some ambiguity exists and makes applicable the rule that courts may ignore the technical grammatical meaning and ascertain the real intent of the legislature. (*Doughton Seed Co. et al. v. United States*, 24 C. C. P. A. 258, T. D. 48686.) Such "strict grammatical sense may be modified, extended, or abridged as is found necessary to accomplish the clearly ascertainable legislative purpose." *Bayersdorfer v. United States* (7 Ct. Cust. Appls. 66, 68, T. D. 36390).

In paragraph 592 of the Tariff Act of 1883 the conjunctive "and" was used. Beginning with paragraph 751 of the Tariff Act of 1890 the disjunctive "or" was substituted. The reason, if any, for this change in grammatical construction is not apparent and the legislative record of that period does not explain this action. It will be noted, however, that the word "or" has appeared in all tariff acts since the act of 1890, including paragraph 695 of the act of 1897 which was before the court in the *Morningstar* case, *supra*. Congress made no change but continued the same wording in the tariff acts enacted subsequent to the decision in that case.

In *United States v. Stone & Downer Co. et al.*, 274 U. S. 225, at page 244, the court said:

\* \* \* \*. With the intent of the Act clearly in mind, however, we must see whether it is true that the language used can only bear the construction insisted upon by the importers and upheld by the Court of Customs Appeals, or whether there is a broader and more reasonable construction that can be fairly placed upon the statute which will serve the plain Congressional purpose.

The merchandise as imported is not a pure animal, vegetable, or mineral wax, but is a combination of two of these duty-free waxes. I am of opinion that the imported wax comes squarely within the ruling in the *Morningstar* case, *supra*, where, as in the case at bar, the merchandise was a mixture of carnauba wax and paraffin. I believe the decision in the *Morningstar* case, *supra*, correctly interprets the intent of Congress and under the doctrine of legislative sanction of judicial interpretation controls the issue herein presented.

It having been clearly established that the importation is a wax, it is difficult to conclude that Congress intended to impose a duty on a combination of two waxes when the individual waxes were free of duty and there was no specific provision in the act for a mixture of these

duty-free waxes. The protest should be sustained and the merchandise admitted free of duty under paragraph 1796 of the Tariff Act of 1930.