(C. D. 1021)

P. Beiersdorf & Co. v. United States

United States Customs Court, First Division

(Decided August 26, 1946)

*Eugene R. Pickrell* (*Eugene A. Chase* and *Joseph B. Brady* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady* and *Richard F. Weeks*, special attorneys), for the defendant.

Before Oliver, Cole, and Mollison, Judges; Oliver, P. J., concurring; Mollison, J., dissenting

Cole, Judge: This case concerns the tariff classification of merchandise invoiced as "Absorption Wax," consisting of from 16½ to 20 per centum wool wax and from 80 to 83½ per centum paraffin. The wool wax and paraffin were heated together and just blended and poured out in cases, where the material congealed again.

The collector classified the merchandise as a manufacture of wax under paragraph 1536 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1536), assessing duty at the rate of 20 per centum ad valorem, and also imposed an internal revenue tax of 3 cents per pound on 20 per centum of the weight, under the provisions of section 2491 (c) of the Internal Revenue Code (26 U. S. C. 1940 ed. § 2491 (c)). Plaintiff does not dispute the applicability of the internal revenue tax, but limits its claims to tariff classifications, the principal one being that the merchandise is free of duty under paragraph 1796 (19 U. S. C. 1940 ed. § 1201, par. 1796), providing for "Wax: Animal, vegetable, or mineral, not specially provided for." An alternative claim is made for free entry of the paraffin portion of the importation under the specific provision therefor in paragraph 1733 (19 U. S. C. 1940 ed. § 1201, par. 1733), and the wool wax content under said paragraph 1796.

On motion of plaintiff and with consent of defendant, the record in *P. Beiersdorf & Co., Inc.* v. *United States* (31 C. C. P. A. 158, C. A. D. 267), was admitted in evidence. In that case, the imported merchandise was produced as follows:

* * * 'Wool grease or lanolin (which is purified wool grease) is distilled or saponified to obtain wool grease fatty acids. These fatty acids are heated together with glycerine, which is of animal origin, in a process known as esterification. The product then becomes a glycerine ester of wool grease fatty acid. After cooling, it is skimmed off the glycerine and boiled in a charcoal solution to purify it, and it is then evaporated. The product at bar remains.

The court found the product to be an animal wax of the kind contemplated by paragraph 1796 of the Tariff Act of 1930 and accordingly held it to be free of duty.

Incorporation herein of the record in the cited case carries the conclusion that the wool wax in the present merchandise is of substantially the same character as the product involved in the *Beiersdorf* case, *supra*, and therefore, as a matter of law, it is an animal wax within the purview of said paragraph 1796.

Hence, the sole question for determination is whether the presence of paraffin in the present merchandise disturbs the classification of the wool wax.

The wool wax contained in the imported material originated in Germany and was sent to Holland after the outbreak of war between England and Germany, but before invasion of the Netherlands, and during the time when the British blockade was effective. Under the British blockade system, goods partially of enemy origin were permitted to be shipped if not more than 25 per centum of the cost was due to enemy labor and material.

To comply with the order of the British Government and obtain the desired wool wax and a required export license from Holland, plaintiff's witness—an amply qualified chemist whose experience included analytical work with the branch laboratory in Holland—conducted a series of tests, mixing the wool wax with mineral wax with the view of blending both without affecting the intended commercial usage of the wool wax. The imported merchandise is the result of such tests.

Plaintiff seeks to invoke, under such set of facts, the principle applied in *United States* v. *Aetna Explosives Company*, 256 U. S. 402. In that case, the merchandise consisted of nitric acid, to which had been added approximately 20 per centum by weight and 5 per centum according to value of sulphuric acid. The nitric acid was required for the manufacture of high explosives, the sole purpose of the sulphuric acid being to prevent corrosion of the steel tanks in which the nitric acid was shipped. The addition of sulphuric acid followed a regulation of the Interstate Commerce Commission, requiring such

addition to permit shipment of nitric acid in steel cars. Under such circumstances, the court found the imported commodity to be "nothing more than nitric acid rendered non-injurious to steel tanks by adding sulphuric acid of small value." In the present case, the introduction of the paraffin with the wool wax was a matter of expediency for plaintiff to overcome the obstacle that developed through foreign political conditions. Clearly, the situation here is not analogous with that presented in the cited case. Consequently, the reasoning employed in the *Aetna Explosives Co.* case with comparable conclusion cannot be applied here.

The presence of paraffin in the imported material did not enhance the commercial value of the wool wax. On the contrary, its addition resulted in "some disadvantages" to the wool wax. As a matter of fact, the material, as imported, has no commercial use, but has "to be melted together with the mineral waxes and paraffin oil, white oil to give the base for an emulsion." The wool wax makes the imported merchandise suitable for processing into an emulsion. The paraffin serves no purpose in that direction. The emulsion, produced with the use of the imported wool wax, consists of approximately 35 per centum of the imported substance, 15 per centum mineral wax, and 50 per centum mineral oil, such proportion of ingredients being necessary to obtain the desired consistency of the emulsion ultimately employed in the manufacture of cosmetics.

Plaintiff's witness recognized the instant merchandise as a wax from its melting point, consistency of the material, the feel of it, and general appearance. Defendant's witness characterized the merchandise as an "absorption wax."

Counsel for defendant contends that the issue before us is controlled by *United States* v. *General Dyestuff Corp.*, 29 C. C. P. A. 53, C. A. D. 170. There, the merchandise consisted of so-called I. G. Wax Z, produced from montan wax which had been bleached, reduced with iron powder, and hydrogenated with a nickel catalyst, resulting in a waxy substance having a crystalline appearance, somewhat like paraffin, and used for a variety of purposes. The court recognized the merchandise as a manufactured material, waxy in character, and "so processed and manufactured that its original nature and wax characteristics have been greatly altered and changed," thus transforming "it into a new material with new uses for which the original material, montan wax, was not suitable." It was excluded from classification under paragraph 1796, *supra*, on the theory that Congress intended to limit said paragraph to crude wax or wax in its natural state, the court holding the commodity to be classifiable as a nonenumerated manufactured article under paragraph 1558, the classification now sought by defendant.

Repudiation of the judicial interpretation set forth in the said *General Dyestuff Corp.* case was first indicated in the *P. Beiersdorf & Co., Inc.* case, *supra,* and later very definitely expressed in *Adolphe Hurst & Co., Inc.* v. *United States,* 33 C. C. P. A. 96, C. A. D. 322, wherein the product involved was described as follows:

The basic, or "starting", material of the substance is montan (mineral) wax derived from lignite, similar to the basic substance of the wax involved in the *General Dyestuff Corp.* case, *supra.* That it received treatment before importation which changed its character to some extent from that of a simple montan wax does not seem to be seriously controverted. We think the evidence supports the Government's contention that as imported the merchandise shows the presence of calcium soap and beta butylene glycol in ester form—substances which are not natural constituents of montan wax and which must have been added in the treatment of the montan wax.

In reversing the earlier construction of paragraph 1796, *supra,* the court, in the *Hurst* case, *supra,* stated:

* * * The Congress not having limited paragraph 1796, *supra,* to "Wax, Animal, vegetable, or mineral," in the crude or natural state of the wax, we are of opinion that wax, such as that at bar, which has been advanced in value or condition by manufacturing processes, but which is still wax and suitable for use as a material and which has not been converted into a new article having a new name, character, or use, and is not otherwise specially provided for, is not precluded from free entry under paragraph 1796, *supra,* merely because it is not in its crude or natural state.

In the case of *P. Beiersdorf & Co., Inc.* v. *United States,* 31 C. C. P. A. (Customs) 158, C. A. D. 267, decided February 7, 1944, we held that wax produced from wool grease or lanolin was free of duty under paragraph 1796, *supra,* as animal wax. We there held that that paragraph was not limited to natural wax, but that it included wax produced by manufacturing processes from other substances. It is not intended to suggest that our decision in that case is controlling here but we cite it as disclosing the view then and now entertained that paragraph 1796, *supra,* is not limited to natural wax.

The foregoing pronouncement is a comparatively recent one, having been rendered on January 4, 1946, after the trial of the instant case and subsequent to the filing of a brief herein by Government counsel, whose argument before us is a paraphrasing of the reasoning followed in the *General Dyestuff Corp.* case, *supra.* In the light of the *Hurst* case, materially broadening the scope of paragraph 1796, *supra,* defendant's position concerning the present issue becomes wholly ineffective.

The imported material under consideration is substantially a wool wax. Its ultimate use is dependent entirely upon the wool wax contained therein. True, its properties are not identical with those of the crude or natural wax, but this condition does not affect its tariff classification as wax. It is mere material, possessing definite characteristics of wax and requiring further processing before becoming available for any practical use. The statutory construction invoked

in the *P. Beiersdorf & Co., Inc.* and *Adolphe Hurst & Co., Inc.* cases, *supra*, brings the instant merchandise clearly within the purview of said paragraph 1796, and therefore entitled to free entry, as claimed by plaintiff.

*Strohmeyer & Arpe Co.* v. *United States*, 10 Cust. Ct. 251, C. D. 764, is distinguishable. That case involved merchandise described on the invoice as "bleached carnauba wax," consisting of 13 per centum of carnauba wax and 87 per centum of paraffin. There, however, the mixture was in such proportion as to produce a commercial product suitable for a variety of uses. The court expressed its finding this way:

We think it fairly appears from the record that merchandise such as that at bar is made for the purpose of obtaining, in a relatively cheap product, a combination having desirable properties of waxes which are either scarce or expensive. Carnauba, it appears, is a relatively expensive wax; paraffin is relatively cheap. The merchandise at bar, when compared with carnauba wax, is inferior thereto, but when compared with paraffin, is superior. It has acquired a suitability for uses which neither paraffin nor carnauba alone possesses, its chief advantages over paraffin being higher dielectric strength for use in electrical work and greater water-repellent properties. Its chief advantage over carnauba appears to be its relatively low cost.

From the foregoing, it is apparent that while the merchandise in issue has, by the blending of its component waxes, acquired suitability for new uses it is nevertheless still a wax material as distinguished from a manufacture of wax, and under the authority of *United States* v. *General Dyestuff Corporation*, 29 C. C. P. A. 53 C. A. D. 170, the collector's classification under paragraph 1536 must be held to be erroneous.

Language, analogous to the foregoing and with like effect, cannot be applied to the instant merchandise. The components of the material under consideration do not produce an article or a commodity capable of any use. The mixture in question is not suitable for use as imported, but has to be "mixed further with waxes and oil" before acquiring commercial usage. The present merchandise is substantially wool wax, concededly of a kind entitled to free entry under paragraph 1796, *supra*. The blending with paraffin did not enhance the value of the desired mineral wax nor promote its availability for practical use.

The claim for free entry under said paragraph 1796 is sustained and judgment will be rendered accordingly.

### CONCURRING OPINION

Oliver, Presiding Judge: For the reasons set forth in my dissenting opinion filed in *Strohmeyer & Arpe Co.* v. *United States*, 10 Cust. Ct. 251, C. D. 764, I concur in the conclusion of my associate, Judge Cole, as I am of opinion that the imported merchandise, being a mixture of wool wax and paraffin, neither of which is subject to duty, is entitled

to entry free of duty under the provisions of paragraph 1796 of the Tariff Act of 1930 (*United States* v. *Morningstar*, 168 Fed. 541).

MOLLISON, Judge: I regret that I am unable to concur in the conclusions reached by either of my colleagues in this case. I agree with Judge Cole's view that the principle of the case of *United States* v. *Aetna Explosives Co.*, 256 U. S. 402, sought to be invoked by the plaintiff, has no application herein. The record in the case at bar clearly shows that the mixture of wool wax and paraffin was intended to be used and actually was used as a mixture by the plaintiff (R. pp. 23, 24, 25, 31), and there is evidence offered on behalf of the defendant to the effect that such a mixture is a well-known one in the cosmetics industry (R. pp. 39, 41, 43).

I disagree, however, with his conclusion that the merchandise is entitled to the tariff classification of wax under paragraph 1796 of the Tariff Act of 1930. That provision reads:

Wax: Animal, vegetable, or mineral, not specially provided for.

Nowhere in the record has anyone attempted to identify the merchandise at bar, that is to say, the mixture of wool wax and paraffin, as either animal, vegetable, or mineral wax. Indeed, at page 34 of the record, plaintiff's witness Lowenstein, its production manager and chemist, specifically testified that the imported material was neither *animal, vegetable, nor mineral wax*, but a mixture of animal wax with mineral wax. If paraffin is considered to be a mineral wax, as seems to be commonly understood, then the imported article is a combination or mixture of animal and mineral waxes which combination or mixture does not seem to be provided for in the paragraph quoted.

In my view the *Hurst* case, cited by Judge Cole, does not go to the length of holding that paragraph 1796 covers *all* wax materials. The situation which obtained in that case differed from that which obtains in the case at bar in that the merchandise there involved consisted of *mineral* wax which had been processed but which still remained a *mineral* wax material. Here an animal wax and a mineral wax have been merged in such a manner that the resultant product, although a wax material, cannot be said to be either one. The ingredients no longer retain their original individual identities—they have, in a sense, been destroyed, and a new product has been created which possesses a physical and chemical character and identity of its own.

The foregoing expresses the reason for my disagreement with Presiding Judge Oliver's view. It is true that the merchandise at bar is a mixture of two products which, if imported separately, would be entitled to free entry. However, that mixture has a physical and chemical character and identity different from those of either

of its constitutents, and neither wool wax nor paraffin wax exists as such in the imported product.

I believe that the proper classification of the merchandise before us is under the catch-all provision in paragraph 1558 for nonenumerated manufactured articles.