GRAUERT CO. *v.* UNITED STATES (No. 2196).[1]

LEGISLATIVE SANCTION OF JUDICIAL CONSTRUCTION—"OESER FOLIE"—ALUMINUM OR BRONZE IN LEAF.

Leaves made by the use of powdered aluminum or bronze and an adhesive, known as "Oeser folie," used as is aluminum or bronze leaf, having been classified by the Board of United States General Appraisers under paragraph 175, tariff act of 1909, as aluminum or bronze in leaf and the paragraph having been reenacted as 146 of the act of 1913, it will be presumed that Congress sanctioned such classification; and the claims of the protest for dutiability under paragraph 167 as a manufacture of metal, under paragraph 5 as a chemical compound, preparation or mixture, or under paragraph 385 as a manufactured article not enumerated were properly denied.

United States Court of Customs Appeals, May 7, 1923.

APPEAL from Board of United States General Appraisers, Abstract 44995.

[Affirmed.]

*Brooks & Brooks* (*Frederick W. Brooks, jr.*, and *Ernest F. A. Place* of counsel) for appellant.

*William W. Hoppin*, Assistant Attorney General (*Samuel Isenschmid*, special attorney, of counsel), for the United States.

[Oral argument, March 21, 1923, by Mr. Place and Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

The imported merchandise in this case is produced in the following manner: A liquid composition base composed of binding materials such as glue, glycerine, albumen and water, or like substances, is thinly spread upon glass. When partially dry bronze or aluminum powder is spread thereon and adheres thereto. Later the article is removed from the glass, resulting in very thin sheets. These are put together in small books with tissue paper between the leaves;

---

[1] T. D. 39632.

the back of some leaves is covered with an adhesive substance, enabling them to adhere to the object on which they are placed, while those not so covered depend for that purpose upon some other agent. These books are known in the trade under their trade-marked name as "bronze foil" or "Oeser folie," the word "folie" being synonomous with "foil." Oeser is the name of the inventor. They are patented articles. In the specifications of the letters patent under which they are manufactured it is claimed the invention is a process for producing bronze-leaf and metal leaves. As imported, the merchandise is used for stamping books and articles by a stamping press in the same manner as gold or silver leaf is used, but it can not be used for all the purposes for which bronze leaf composed of metal only may be used, such as decorating windows and gilding the edges of books.

The merchandise was classified and assessed under paragraph 146 of the act of 1913, which provides, among other things, for bronze or aluminum in leaf. It is claimed to be dutiable under paragraph 167 as a manufacture of metal, or, alternatively, under paragraph 5 as a chemical compound preparation or mixture, or under paragraph 385 as a manufactured article not enumerated.

Although some of the leaves are made with bronze powder and others with aluminum powder, we will use the term bronze as do the parties as denoting both materials.

The importer protested the classification. The Board of General Appraisers overruled the protest and the case is here on importer's appeal.

The board sustained the classification of the collector upon the authority of abstract 27928 (T. D. 32333) decided before the enactment of the act of 1913. In that case like merchandise was assessed as a manufacture of metal under paragraph 199 of the act of 1909, which so far as applicable to merchandise here is of the same effect as paragraph 167 of the act of 1913 under which importer now claims. In that case however, importer claimed classification under paragraph 175 of the act of 1909 of which paragraph 146 of the act of 1913 is a reenactment, except as to rate of duty. In that case the board sustained the importer's protest and held the merchandise classifiable under paragraph 175 of the act of 1909. In other words, at the instance of another importer in that case it was held that like merchandise was classifiable under the same provision of law as that which the collector has applied in this case.

We think this presents a clear case of legislative ratification and adoption of the interpretation given to the earlier act and justifies the conclusion below.

The only difference apparent in the facts in that case and this is that the board's opinion there states that the Oeser folie was available

for the uses to which hammered bronze leaf might be applied while here it appears it is not available for *all* such uses but that difference we regard as immaterial because it is manifestly used for a great many of the same purposes.

Paragraph 146 does not specifically provide for hammered bronze leaf, but does provide for bronze in leaf.

The importer contends in this case that bronze may be regarded as the component of chief value, to which we agree, and as it really is in leaf form we think it is more specifically provided for in paragraph 146 than in 167. It is unnecessary to consider the alternative claims made by the importer.

The judgment of the Board of General Appraisers is *affirmed.*