UNITED STATES *v.* BASSICHIS CO. ET AL. (No. 3111)[1]

United States Court of Customs Appeals, November 30, 1928

*Charles D. Lawrence,* Assistant Attorney General (*Kenneth G. Osborn,* special attorney, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellees.

[Oral argument October 8, 1928, by Mr. Lawrence and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Paragraph 230 of the Tariff Act of 1922 reads as follows:

Stained or painted glass windows, and parts thereof; and all mirrors, not specially provided for, not exceeding in size one hundred and forty-four square inches, with or without frames or cases, 50 per centum ad valorem; *and all glass or manufactures of glass or paste, or of which glass or paste is the component material of chief value, not specially provided for, 50 per centum ad valorem.* (Italics ours.)

[1] T. D. 43133.

Bags of broken sheet glass were assessed by the collector at the port of Buffalo, N. Y., under the above paragraph as "all glass or manufactures of glass * * * not specially provided for," at 50 per centum ad valorem. In the protest of appellees the merchandise was claimed to be dutiable at 10 per centum ad valorem under paragraph 1457 as "Waste, not specially provided for," or free of duty under paragraph 1601 as "Junk, old."

The exhibits in the case consist of ordinary pieces of broken window glass, dirty and irregular in shape.

The testimony in the case shows that the merchandise was purchased in Canada from glass-manufacturing plants and that in these plants it was regarded as waste; that it was found in piles, scattered around indoors and outdoors, and was the waste from the cutting of window glass; that the waste was cut from the ends and sides of sheets of glass and, when broken off, was thrown into a waste box; that it was bought and sold as "waste" and was also known as "cullet" and "junk glass"; that it was purchased and used for the purpose of being mixed with a batch consisting of silica, sand, lime, etc., in the remanufacture of window glass and that it was susceptible of no other use.

The first division of the United States Customs Court in a very well-written opinion by Mr. Justice Sullivan held the merchandise to be dutiable as waste at 10 per centum ad valorem under paragraph 1457. The opinion of the court below seems to proceed upon the theory that it is an initial question and does not pass upon the main question which is presented here. The opinion is so apt in its discussion of the law applicable to the three paragraphs concerned that we feel that the same ought to be set out in full in this opinion and here follows:

The official sample of this merchandise consists of pieces of ordinary broken glass. The pieces are dirty, and appear to be old scraps.

It was classified under paragraph 230, which provides, among other things, for all glass or manufactures of glass not specially provided for, at 50 per centum ad valorem.

It is claimed dutiable at 10 per centum ad valorem under paragraph 1457, or free under paragraph 1601.

Paragraph 1457 provides a duty of 10 per centum on "Waste, not specially provided for."

Paragraph 1601 provides for exemption from duty of "Junk, old."

Mr. Sessler testified that this merchandise is cuttings from sheets of glass "thrown into a waste box and heaped in a pile of junk glass." The words "junk glass" were ordered stricken out.

The witness further testified he had seen this merchandise used in the United States as follows:

It is mixed with the batch consisting of silica, sand, lime, and so forth.

He testified he sold it as waste glass for remanufacture "to be used in the batch for remelting purposes."

Mr. Andrews testified that this merchandise "is junk glass"; that it is used for remelting, and is not susceptible of any other use. He was then asked:

When you buy and sell a commodity like this, what do you call it as?

He answered:

Scrap glass or junk. Sometimes they use the word "cullet." That is termed as "refuse, broken, or junk glass." It was created in the early history of the business by the bottle industry. A certain amount of this type of glass would stick on the iron and breaks.

On cross-examination the witness testified that this is always called waste.

It seems to us that this merchandise should not be classified under paragraph 230 at 50 per centum ad valorem, for the reason it is not used as glass—merely as a material in the manufacture of glass. While it is nominally glass, in its imported condition it is not actually such any more than is the silica, sand, lime, etc., which is used in the manufacture of glass.

In our opinion the only question before us is to determine whether this material is dutiable as waste or free as junk.

Cullet is defined in the Standard Dictionary as—

Broken or refuse glass, especially that gathered for remelting.

One of the definitions of "junk" in the same dictionary is—

Cast-off material of any sort that can be put to some use; odds and ends, as scrap iron, old bottles, or paper.

Some of the applicable definitions of "waste" in the same authority are—

Something rejected as worthless or not needed; surplus or useless stuff, especially refuse of a manufacturing process or industrial art, as coal dust or gob. * * * Broken or spoiled castings for remelting. * * * That which is superfluous or excessive. * * * rubbish.

The Court of Customs Appeals in *Harley* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644 in defining "junk" stated:

That designation meant a manufactured article rendered unsuitable for the purpose for which it was originally made, which thereby became fit only for remanufacture and had no value other than that of a manufacturing material.

In defining "waste" the court said:

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture.

These scraps of glass are manufactures "which have become useless for the original purpose for which they were made." They are only fit for remanufacture into glass by being remelted and mixed with silica, sand, lime, etc. In addition, Mr. Sessler testified, "This is thrown into a waste box," and Mr. Andrews, "This is always called waste."

We therefore hold these scraps of glass dutiable as waste at 10 per centum ad valorem under paragraph 1457.

The protests are sustained.

Little more could be said or could it be better said than what we find in the above opinion concerning the applicability of the three paragraphs involved. In this court, however, the Government has

presented an issue which was not discussed in the opinion of the court below and probably was not presented to it for decision, and that is the question of legislative sanction of judicial interpretation. It is to be regretted that an issue of such importance should be presented here without having been first presented to the court below, especially in view of its controlling effect in the decision of the case.

While the Government insists that the merchandise at bar was properly assessed as "all glass" and that "all glass" properly covers the merchandise, and that that provision of paragraph 230 is more specific than either of the other paragraphs involved, its chief argument in this court is to the effect that, regardless of how the merchandise should be assessed for duty, if it was an initial question, the decisions of the Board of General Appraisers on prior occasions, holding similar merchandise to be "all glass," and the subsequent reenactment of substantially the same language, must be held to mean that Congress approved the classification.

Briefly, the history of pertinent glass legislation and previous judicial decisions affecting the same are as follows:

Prior to the passage of the Tariff Act of 1897 there were provisions for "Glass, broken," in the free list of the Tariff Acts of 1890 and 1894, and a provision for "Glass, broken pieces," in the act of 1883. In the enactment of the Tariff Act of 1897 "Glass, broken," was omitted from the free list, and, coincident with the omission, the provision for "all glass" was added to paragraph 112, which was the predecessor of paragraph 230 of the Tariff Act of 1922. The act of 1897, as well as the Tariff Acts preceding it, contained provisions for "Waste, not specially provided for," and for "Junk, old." In the Tariff Act of 1894 the predecessor paragraph, 102, did not contain the words "all glass" but did contain the words "all manufactures of glass." In May, 1898, in T. D. 19311, the Board of General Appraisers held that broken glass was properly dutiable at 45 per centum ad valorem under paragraph 112 of the act of 1897. There we find the following language used:

The merchandise consists of 150 bags of broken glass fit only for remanufacture.

The exemption for broken glass contained in previous tariffs having been omitted from the act of 1897, duty was assessed at 45 per centum under the provision of paragraph 112 for *all* glass not specially provided for. The appellants claim that the merchandise is entitled to free admission as junk under paragraph 588, or that it is dutiable at 10 per centum or 20 per centum under section 6, alleging that paragraph 112 applies only to sound glass.

We find that the merchandise is (1) glass and (2) junk; but as there is no limitation to sound glass in paragraph 112, we must hold that the provision for glass is more specific than for junk.

The assessment of duty is affirmed accordingly.

See *United States* v. *Beirle*, 1 Ct. Cust. Appls. 457, T. D. 31506, as bearing upon the effect of dropping the provision for "glass, broken."

In 1904, in T. D. 25477, decided by Somerville, general appraiser, the effect of the decision of T. D. 19311 was referred to as holding that paragraph 112 of the Tariff Act of 1897 was broad enough to include within its scope broken glass which possessed some commercial value. This case is not directly in point in so far as the question arose over a claim for nonimportation of the glass which was broken *in transitu* and which was in the cases with unbroken window glass. As affects the issue in this case, every succeeding Tariff Act since 1897 is substantially the same, all omitting the provision for "Glass, broken," and all containing the provision for "all glass * * * not specially provided for."

There is no proof or record of any administrative practice except as is shown by the collector's action in this case and in T. D. 19311. We think the question of the force and effect to be given to the doctrine of legislative sanction of judicial interpretation is squarely and clearly presented by the foregoing statement of facts.

The doctrines of legislative approval of judicial interpretation, and legislative approval of long-continued administrative practice, while quite similar in character and in the effect of their application, must not be confused. The doctrine of legislative sanction of judicial interpretation may be applied from what is found in the statutes and the decisions of the courts. The doctrine of legislative approval of long-continued administrative practice is different in this, that long-continued administrative practice may originate without judicial decision to direct it, and the doctrine of legislative approval of such practice applies to such a situation when such practice is shown. See *Osceola Mill & Elevator Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 139, T. D. 38938, and *United States* v. *Mills & Gibb*, 8 Ct. Cust. Appls. 422, T. D. 37667. It might be contended that long-continued administrative practice might be presumed from the fact that the trial Customs Court having directed the classification, the administrative officers are presumed to follow its mandate. But this is not necessarily true, and the indulgence of such a presumption might lead to very serious error. In this case there is no evidence or other record proof of long-continued administrative practice except as above indicated, and this is not sufficient to justify the application of the doctrine to the facts at hand.

This and other courts, in many cases, have given controlling effect to the doctrine that the legislature is presumed to have approved of judicial interpretations of tariff legislative provisions by the subsequent reenactment of the same or substantially the same language. *United States* v. *Baruch*, 223 U. S. 191; *Latimer* v. *United States*, 223 U. S. 501; *United States* v. *Ascher & Co.*, 11 Ct. Cust. Appls. 453, T. D. 39532; *United States* v. *Yuen et al.*, 11 Ct. Cust. Appls. 479, T. D. 39571; *Grauert Co.* v. *United States*, 11 Ct. Cust. Appls. 495,

T. D. 39632; *Wanamaker* v. *United States*, 13 Ct. Cust. Appls. 93, T. D. 40939; *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941; *United States* v. *Beierle, supra; United States* v. *Post & Co.*, 3 Ct. Cust. Appls. 260, T. D. 32568; *United States* v. *Frank*, 15 Ct. Cust. Appls. 97, T. D. 42184; *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T. D. 42214; *United States* v. *Lilly & Co. et al.*, 14 Ct. Cust. Appls. 332, T. D. 41970.

In T. D. 19311 there was a definite, clear interpretation of the words "all glass, * * * not specially provided for," which, when unappealed from, became the definitely determined judicial status of the question, to be followed in the administration of the tariff act. After that decision was rendered and promulgated, Congress, on three successive occasions, used the identical language, and it must be presumed that in using it the legislative body was fully cognizant of such judicial interpretation and the results that would ordinarily flow from it. Looking at the question as an initial one, we think the Board of General Appraisers might well have held that paragraph 112 of the Act of 1897 did not cover the merchandise, and that it was waste or junk, depending upon the particular facts concerned with the broken glass then at bar. *Willits & Co.* v. *United States*, 11 Ct. Cust. Appls. 499, T. D. 39657; *Hartley* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644. But Congress, having the situation before it and presumably being fully cognizant of the import and effect of the same, on three successive occasions failed to change the provision in any respect. If any effect or controlling influence is to be given to the doctrine, it would seem to apply here.

We do not mean to be understood as saying that this rule of construction is so all-powerful as to be controlling as against all other rules of interpretation, since the intention of Congress might be so clearly shown in another way as to preclude the application of the rule. To illustrate, let us suppose the committee reports of both House and Senate definitely stated that it was not the intention in the reenactment of the three subsequent provisions to sanction or approve of a classification of broken glass under the "all glass" provision. It is obvious, under the supposed state of facts, that it would be erroneous to conclude that the reenactment in substantially the same language showed that Congress approved of the previous judicial interpretation.

It may be pointed out that the application of the doctrine in the case at hand leads to incongruity and inequality and does violence to other rules of construction such as the doctrine of ejusdem generis and noscitur a sociis and that, therefore, the rule ought not to be successfully invoked. We see nothing in the context of this and the other acts concerned or in the history of the legislation that so strongly

indicates an intention not to require classification of broken glass under the "all glass" paragraph as to suggest the impropriety of the application of the rule with controlling effect. It is pointed out that while the provision for "Waste, not specially provided for," was in the Tariff Act of 1897, the importer did not claim that its merchandise was waste and that the board did not consider the application of the waste provision to the broken glass then in controversy and that, since the court did not construe the waste provision, it was not such a judicial interpretation of the pertinent provisions as would justify the application of the rule. Let us bear in mind that the board, in T. D. 19311, found specifically that the importation was "(1) glass and (2) junk."

There was a judicial determination that the merchandise was covered by the "all glass" provision which was a more specific provision than either "Junk, old," or "waste." If the board had considered the waste provision and had found the merchandise to have been waste, it would have made no difference in the result, since it found the merchandise to be "all glass," which was a more specific provision than "Waste, not specially provided for."

It is ably argued here by importers' learned counsel that paragraph 230 is a provision for manufactures of glass and that, under the doctrine of noscitur a sociis, the merchandise, being a material and not a manufacture, should not be associated with other articles named in the paragraph. Further, they contend that it is beyond belief that Congress could have intended that broken glass, which was previously on the free list, as a material for the making of glass, should suddenly be given the same tariff treatment as the finished product upon which great labor and cost had been expended. The free listing of glass sand and glass-making materials is pointed to as indicative of the intention of Congress, but to all this it must be answered that Congress knew all these things and made no material change in subsequent enactments. It must have been contented with the classification directed by the board. If not, its disapproval would have found expression in the later acts. To hold otherwise would not only do violence to a very helpful rule of construction, but would be attributing to the legislative body an unusual indifference or lack of knowledge. This attitude is to be avoided.

In argument before this court the question was raised as to whether or not the importation might be regarded as window glass and as such dutiable under an appropriate glass paragraph in Schedule 2. We think not. Such provisions as have been called to our attention provide for glass in its whole completed form and which is imported to be used for the purposes for which it was designed, and not to be used as a material in the manufacture of window glass. The impor-

tation at hand is not window glass, but is a waste from the manufacture of window glass.

It is not seriously contended in this court that the merchandise is "Junk, old." It does not possess the characteristics of old junk as that term is defined in *Harley Co.* v. *United States, supra.*

In *United States* v. *Basket Importing Co., supra,* this court indicated that some of its prior decisions which had been followed by the administrative branch of the Government were erroneous, but concluded that the damage occasioned in requiring change in classification without legislative approval was so great that it declined to take a new position which it regarded as probably more correct and said:

If the question before the court, in the two cases above cited, were before us now, for the first time, under the present statement of facts, we might be inclined to give serious consideration to the contention that the words "not the separated fibers thereof" explained what Congress meant when it said "in their natural state," and that they did not intend to exclude from the paragraph manufactures of straw which were colored. These decisions have been followed by those administering recent tariff legislation, and Congress, in the manufactures of straw paragraph of the Tariff Act of 1922, has used language identical with that used in the paragraph relating to the same subject matter in the act of 1913 notwithstanding the decisions of this court.

Congress, by such reenactment, has given approval of the interpretation put upon the clause by this court. *United States* v. *Post & Co.*, 3 Ct. Cust. Appls. 260, T. D. 32568.

. If it was conceded that these decisions were erroneous, we believe it would be harmful rather than helpful to make any change, at this time, in our former rulings on this question. The courts, and this court especially, in passing upon close questions of construction in tariff legislation, have stressed the importance of uniformity of decision and of settled and well understood administrative practice. The persuasiveness of the fact that a position, technically more correct, might be arrived at by the consideration of fine distinctions when reviewed under a new statement of facts, must yield to the advantages to be derived by all parties concerned from a policy affecting the levying of customs duties, which is well understood and acquiesced in. *Ulmann* v. *United States*, 5 Ct. Cust. Appls. 357, T. D. 34551; *United States* v. *Baruch* 223 U. S. 191; *Goussios & Co.* v. *United States*, 2 Ct. Cust. Appls. 317, T. D. 32051.

Thirty years have elapsed since T. D. 19311 became the law on the question. In view of the subsequent attitude of Congress we would not be justified in directing classification contrary to its mandate. The legislature may do so, but we must not.

The judgment of the United States Customs Court is *reversed.*