(C. D. 1623)

HERMES OF PARIS, INC. AMERICAN EXPRESS CO. } v. UNITED STATES

United States Customs Court, Second Division

(Decided June 17, 1954)

*Sharretts, Paley & Carter* (*Edward P. Sharretts, Jr.*, of counsel) for the plaintiffs. *Warren E. Burger*, Assistant Attorney General (*Arthur R. Martoccia* and *Samuel D. Spector*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: This is an action to recover excess duties alleged to have been erroneously assessed upon certain imported merchandise. The commercial invoice, addressed to importer, Hermes of Paris, Inc., contains the following description of the articles herein involved:

> Intérieurs agendas de bureau 1952
> 1952 Refills for weekly diary
> Intérieurs agendas G. M. 1952
> Refills for men's pocket size agendas 1952
> Intérieurs agendas P. M. 1952
> Refills for ladies' pocket size agendas 1952
> Blocs de rechange pour blocs à l'italien
> ne
> Refills for italian note-pads (6 each)

The collector of customs at the port of New York classified the merchandise included in this importation as diaries and notebooks and, accordingly, assessed duty thereon at the rate of 25 per centum ad valorem, pursuant to paragraph 1410 of the Tariff Act of 1930. Plaintiffs claim, alternatively, for free entry within paragraph 1630 of said act as books printed wholly or chiefly in languages other than English; for classification as printed matter, not specially provided for, with the consequent assessment of duty at the rate of 15 per centum ad valorem, in accordance with the provisions of said paragraph 1410, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802; or for the 12½ per centum rate of duty which said paragraph 1410, as modified, *supra*, imposes upon blank books.

While no one of the foregoing claims has been abandoned insofar as the first three invoiced items are concerned, plaintiffs, nevertheless, place principal emphasis upon the applicability of paragraph 1630, *supra*, which provides as follows:

Books and pamphlets printed wholly or chiefly in languages other than English; books, pamphlets, and music, in raised print, used exclusively by or for the blind;

Braille tablets, cubarithms, special apparatus and objects serving to teach the blind, including printing apparatus, machines, presses, and types for the use and benefit of the blind exclusively.

Insofar as here pertinent, paragraph 1410 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*, contains the following provisions:

Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for:

\*     \*     \*     \*     \*     \*     \*

If of other than bona fide foreign authorship:

\*     \*     \*     \*     \*     \*     \*

Printed matter not specially provided for_____15% ad val.

Blank books and slate books (except diaries, notebooks, and address books), not specially provided for_____12½% ad val.

It is to be noted that the cited provision for blank books specifically excepts from the reduced rate of duty "diaries, notebooks, and address books." For that reason, the collector, in assessing duty upon the instant merchandise, invoked the provisions of paragraph 1410, as originally enacted, which, insofar as here applicable, reads:

\* \* \* blank books, slate books, drawings, engravings, photographs, etchings, maps, and charts, 25 per centum ad valorem; \* \* \*.

A sample of each of the invoiced items was introduced in evidence at the trial of this action. Plaintiffs' exhibit 1 is apparently a refill for a desk diary or appointment book. Bound by two so-called spiral metal clasps, covered front and back by a hard cover and a cellophane cover, it is entitled "Semainier." Printed in French on the initial and concluding pages are the months and days of the years 1952 and 1953, respectively, and the name of the saint associated with each day. The months, days, and saints' names are repeated chronologically throughout the remaining pages of the article, a space being set apart for each day of the week (except Sunday) and each hour of the day. Across the top of each double page, there appears a caption, and we quote the first as typical, "Du 31 Décembre 1951 Au 6 Janvier 1952." Every printed word, including the instructions for obtaining renewal refills, is in the French language, with exception of the numerals which are in Arabic.

Plaintiffs' illustrative exhibit 2, identical with the imported item which it represents, except for the year, is a refill for a man's pocket diary or appointment book. Plaintiffs' illustrative exhibit 3 is a refill for a lady's pocket diary or appointment book. Illustrative exhibits 2 and 3 vary from exhibit 1 in size and in certain other respects not material here.

Concerning these three exhibits, the testimony is that they are books which are designed to be inserted in leather covers; that they are printed in French, intended for French-speaking people who would read the Arabic numerals as though they were written in French; and that Americans might use these books, but they are chiefly sold for home consumption in France.

It further appears that merchandise similar to these exhibits is known in the stationery trade of the United States as appointment books, as illustrated in the catalog of the National Blank Book Co. (plaintiffs' illustrative exhibit 7), as distinguished from diaries (plaintiffs' illustrative exhibit 5 and pages 4 and 5 of catalog, plaintiffs' illustrative exhibit 6), for the reason that space is set apart therein for the hours of the day. Plaintiffs' witness Savoc, a stationery and printing salesman with 17 years of experience in that line, explained the difference as follows:

Exhibit 5, as I explained, is a diary with just the day of the year on the top. It can be in any part of the book and nothing else, but either blank spaces or blank lines, it does not have the hours of the day and that is the difference between the appointment book and diary book.

\* \* \* \* \* \* \*

My definition of a diary, the ones that I handled, is the date printed on the top and the rest of the page blank, with the exception that some of them have blank bottoms or ruled lines.

In connection with said exhibits 1, 2, and 3, plaintiffs urge that they are books which are printed in a language other than English, citing in support thereof the collector's classification of this merchandise as blank *books*; the definition of the word "book" in Webster's New International Dictionary, Second Edition, and as judicially declared in *Overton & Co.* v. *United States*, 22 Treas. Dec. 437, T. D. 32327, and *Balfour, Guthrie & Co.* v. *United States*, 41 Treas. Dec. 263, T. D. 39099; and *Leubric & Elkus* v. *United States*, 6 Treas. Dec. 879, T. D. 24735, followed in *Hawaii Benri Sha* v. *United States*, 60 Treas. Dec. 1379, Abstract 17874, *Bunrindo Book Store* v. *United States*, 21 Treas. Dec. 515, Abstract 27087, and *Same* v. *Same*, 44 Treas. Dec. 492, Abstract 44612, wherein it was held that calendars and diaries printed in French and Japanese were more specifically provided for as books or pamphlets printed in languages other than English, than as printed matter or as books or blank books.

Counsel for the Government contends that the said exhibits are diaries within the common meaning of that term as lexicographically defined; that the exception of diaries from the trade agreement provision for blank books implies an intent to relegate such articles to the original tariff provision for blank books, as being a more specific provision therefor than paragraph 1630, *supra*; and that said paragraph 1630 was intended "to apply to books having texts in a

foreign language and not to mere dates, or blank books with very little text," not susceptible of authorship.

At the outset, it is clear to us that the question of susceptibility of authorship which by judicial construction has been established as a determinant for the classification of books of *bona fide* foreign authorship, and all others, within the first provision of paragraph 1410 of the Tariff Act of 1930 (*United States* v. *Field*, 14 Ct. Cust Appls. 376, T. D. 42031; *United States* v. *A. H. Ringk & Co.*, 16 Ct. Cust. Appls. 323, T. D. 43077), is irrelevant to any construction of paragraph 1630. The language of the latter provision is explicit. If the imported article is a book or a pamphlet, and is printed wholly or chiefly in some language other than English, the requirements of the provision are satisfied. It need reflect no original thought or concept, nor be the product of intellectual labor or literary skill, provided, of course, the printing is substantial and significant in establishing the character of the volume.

When a book or a pamphlet meets such tests, whether it be called a calendar, a diary, an appointment book, or the like, the issue of the relative specificity as between said paragraph 1630 and the provision for blank books in paragraph 1410, *supra*, becomes a simple one to resolve. The term "blank book" is a much more generic one, which refers to many wide varieties of bound blank pages. Such of these as have text, as well as blank spaces, where the text is printed in a foreign language, are, we are convinced, more particularly described by the less general phraseology of paragraph 1630, *supra*. Accordingly, we are of opinion that the diaries, notebooks, and address books excluded from the trade agreement provision for blank books and, by implication, covered by paragraph 1410, *supra*, as originally enacted, are those only which do not respond to the call of paragraph 1630.

A provision for the free entry of books printed in languages other than English has been a part of our tariff structure since the act of 1890 became law. Insofar as merchandise of the category such as here involved is concerned, the paragraph first appears to have been construed under the act of 1897, in the case of *Leubric & Elkus* v. *United States, supra*. Certain calendars, bound in pamphlet form, with printing in French of the day, month, year, and saint's day, were held to be entitled to entry free of duty within paragraph 502 of said act as "books and pamphlets printed exclusively in languages other than English," rather than dutiable as printed matter. In so disposing of the issue, the court stated:

An examination of the sample before us shows that the merchandise is pamphlets, containing 12 pages, bound in a paper cover. All of the matter is printed from type, giving the months in the year, the days of the week in each month, and the name of a saint's day or holiday falling on each day. All of this matter

is printed in French and no other language is used. Such printed matter is clearly within the purview of paragraph 502. It is not necessary, as contended by the Government, that printed matter must be connected stories or sentences to fall within the provision. That the pamphlets are printed is conceded, and being printed matter, exclusively, in a language other than English, it is expressly covered by the provisions of paragraph 502, as claimed in the protest.

The two *Bunrindo Book Store* cases, *supra*, involved diaries containing printed matter exclusively in the Japanese language. These were held to be books printed chiefly in languages other than English, as against classification, under the act of 1909, as books, not specially provided for (Abstract 27087), or as blank books, under the Tariff Act of 1922 (Abstract 46612).

The reenactment of a provision for books printed wholly or chiefly in languages other than English in the successive tariff laws passed since the decision in *Leubric & Elkus* v. *United States, supra*, without substantial change in phraseology, must be taken as congressional ratification of the judicial interpretation there reached. *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133. It is so convincing an expression of approval as to compel the adoption of the rule with respect to merchandise of like character.

While no samples of the calendars which were the subject of decision in the *Leubric & Elkus* case are available for comparison with the merchandise at bar, the description thereof in the excerpt quoted from the court's decision is sufficiently comprehensive to establish a parallel. For the reasons assigned in that case, and in view of our own observations, we sustain the claim of the plaintiffs for free entry within paragraph 1630 of the Tariff Act of 1930 of the first three items enumerated on the invoice, and represented by plaintiffs' exhibit 1, plaintiffs' illustrative exhibit 2, and plaintiffs' illustrative exhibit 3.

The last item on the invoice is illustrated to us by plaintiffs' illustrative exhibit 4. It is a small blank book, approximately 2 by 4½ inches, also bound by a so-called spiral metal clasp, with the name of the distributor printed upon both front and back covers. This article was likewise classified within paragraph 1410 of the Tariff Act of 1930, because of the trade agreement exception of diaries, notebooks, and address books. Counsel for plaintiffs urge the applicability of the trade agreement provision on the theory that this item is a blank book, not a notebook, because it is not "dedicated to any of the uses implied by notebook, address book, etc. It can be used for any purpose that a piece of blank paper can be used."

This position is not supported either by the evidence adduced in this case or the dictionary definitions of these terms. The latter read as follows:

**notebook. 1.** A book in which notes or memoranda are recorded. [Webster's New International Dictionary (2d edition).]

**note-book. 1.** A book in which to enter notes. **2.** A book in which notes of hand are registered. [Funk & Wagnalls Standard Dictionary.]

**blankbook.** A book of blank pages or of blanks, esp. a book of blank pages bound in a strong, flat, easily opened style of binding, for records, accounts, etc. [Webster's New International Dictionary (2d edition).]

**blank book,** a book of blank leaves for accounts, memoranda, or the like. [Funk & Wagnalls Standard Dictionary.]

In view of these definitions, witness Blum's admission that this item is a notebook, and witness Savoc's description of it as a memo book or card, we have no hesitation in holding that the term "notebook" more precisely describes this article than does the term "blank book." Since notebooks are expressly excluded from the reduced rate provided in the General Agreement on Tariffs and Trade, the collector properly applied the rate imposed by paragraph 1410, as originally enacted.

For the foregoing reasons, we hold that the merchandise represented by the first three items on the commercial invoice is entitled to entry free of duty as books printed wholly or chiefly in languages other than English, within the provisions of paragraph 1630 of the Tariff Act of 1930. The claim of the plaintiffs with respect to the remaining item is not well founded. That, and all other claims are overruled.

Judgment will be entered accordingly.