(C. D. 1916)

CURLEY-BATES COMPANY *v.* UNITED STATES

## United States Customs Court, First Division

(Decided September 26, 1957)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; OLIVER, C. J., dissenting

MOLLISON, Judge: The merchandise involved herein consists of tennis-racket frames. Duty was assessed thereon at the rate of 22½ per centum ad valorem under the provision in paragraph 409 of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for—

Tennis-racket frames, valued at $1.75 or more each, wholly or partly manufactured of rattan, bamboo, osier or willow * * *.

They are claimed to be properly dutiable at the rate of 10 per centum ad valorem under the provision in paragraph 412 of the said act, as modified by the said Presidential proclamation for—

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for:

*	*	*	*	*	*	*

Badminton-racket frames and tennis-racket frames:

*	*	*	*	*	*	*

Valued at $1.75 or more each * * *.

At the trial of the issue, it was stipulated between counsel that the merchandise is not partly or wholly manufactured of bamboo, osier, or rattan. There were received in evidence, without objection, a sample of the imported racket frames (plaintiff's illustrative exhibit 1) and a group of eight pieces of wood, composing such racket frames, each being labeled as to the kind of wood of which it is composed (plaintiff's collective exhibit 2). Two of the pieces are marked "Willow Handle Flakes" and one is marked "Willow Dentre Slip," and plaintiff's counsel conceded that those pieces were of willow, as well as a portion of the main frame of the racket, and that plaintiff's illustrative exhibit 1 is in part of willow.

In the brief filed on behalf of the plaintiff, its counsel relies upon a decision of this court reported in *F. L. Slazenger* v. *United States*, 22 Treas. Dec. 1080, T. D. 32641. That case related to cricket bats, which had been assessed with duty under the provision for manufactures of willow in paragraph 212 of the Tariff Act of 1909.

It appeared that the blades of the bats were made of willow wood, i. e., the solid wood of the trunk of the willow tree. It was the con-

tention of the plaintiff, which was upheld by the court, that the provision for "manufactures of osier or willow" in paragraph 212 of the act of 1909 related only to the lighter or twig forms of willow, such as are commonly used for basket making or furniture, and did not relate to articles made from the solid wood of the trunk of that tree.

In this case, plaintiff made no effort to establish the fact, aside from offering the parts labeled as "willow" in collective exhibit 2, that such parts were not made of the lighter or twig forms of willow. However, it does appear from an examination thereof that such·parts were sawn from solid willow wood, rather than from the shoots or twigs of the willow tree.

The provisions of paragraph 212 of the act of 1909, which were construed in the *Slazenger* case, *supra*, read as follows:

212.   Chair cane or reeds wrought or manufactured from rattans or reeds, ten per centum ad valorem; osier or willow, including chip of and split willow, prepared for basket makers' use, twenty-five per centum ad valorem; manufactures of osier or willow and willow furniture; forty-five per centum ad valorem.

The reasoning of the court, which led to its conclusion that such language did not include articles made of solid willow wood, was given in its opinion as follows:

* * * Our attention has not been directed to any case wherein it has been determined either by the board or the courts whether an article manufactured in whole or in chief value of solid willow wood was to be differentiated for the purposes of classification from manufactures of other kinds of wood.   We think a careful reading of paragraph 212, supra, leads to the conclusion that in framing the paragraph it was not the purpose of Congress to do more than provide for the lighter or twig forms of willow, such as are commonly used for basket making and other kinds of wickerwork.   First, there is the provision for chair cane or reeds; next, that for osier or willow, round or divided into sections by splitting, and the manufactures of these forms of willow, and willow furniture.   It is very evident that the terms "osier" and "willow" are used interchangeably and that the provision for "manufactures of osier or willow" was designed only to include articles made of these lighter forms of willow, while it is a matter of common knowledge, we think, that all willow furniture is made from osier willow.   It would seem to be clear that under the rule of *ejusdem generis* articles made from the solid wood of the trunk of the willow tree are excluded from this paragraph. * * *

The foregoing opinion was rendered June 13, 1912, and paragraph 173 of the Tariff Act of 1913 repeated the language of paragraph 212 of the act of 1909.

Paragraph 407 of the Tariff Act of 1922 and paragraph 409 of the present act, as originally enacted,[1] were couched in somewhat different

---

[1] Tariff Act of 1930:

PAR. 409.   Reeds wrought or manufactured from rattan or reeds, whether round, flat, split, oval, or in whatever form, cane wrought or manufactured from rattan, cane webbing, and split or partially manufactured rattan, not specially provided for, 20 per centum ad valorem.   Furniture wholly or in chief value of rattan, reed, bamboo, osier or willow, malacca, grass, seagrass, or fiber of any kind, 60 per centum ad valorem; split bamboo, 1¼ cents per pound; osier or willow, including chip of and split willow, prepared for basket makers' use, 35 per centum ad valorem; all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow, 45 per centum ad valorem.

language from that used in the corresponding paragraphs of the acts of 1909 and 1913. The different language, however, largely relates to an expanded description of the reed and cane provisions and the inclusion of other types of furniture than willow furniture. The association of the terms "osier" and "willow," which was noted in the decision in the *Slazenger* case, *supra*, was continued, but the provision for "manufactures of osier or willow" was changed to "all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow."

We are not, however, able to discern in the changes in the language of paragraph 409 of the present act from the language of paragraph 212 of the act of 1909, which was construed in the *Slazenger* case, *supra*, anything which would indicate an intent on the part of Congress that the term "willow" should have a meaning different from that ascribed to it in the opinion in the *Slazenger* case. In the brief filed on behalf of the defendant, its counsel asserts that the language of the two provisions is "wholly different," but a careful reading of them does not lead us to that conclusion.

So far as the term "willow" is concerned, the only real change is that the provision for "manufactures of osier or willow" appearing in paragraph 212 of the act of 1909 became "all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow" in paragraph 409 of the act of 1930. There is nothing in the latter language which would suggest that, in making the change, Congress intended to cover any willow other than that which had been judicially interpreted to be embraced by the term "osier or willow" as it appeared in paragraph 212 of the act of 1909.

Counsel for the defendant points to the fact that, in the description of articles on which rates of duty were reduced under the Presidential proclamation relating to the general agreement, there was included under the tariff description "all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow," the description "Tennis-racket frames, valued at $1.75 or more each," and states that such additional language "clearly establishes the intent and purpose to include" articles such as those at bar therein.

We do not believe that such intent can or should be inferred from the fact of the inclusion of the provision for tennis-racket frames, in part of willow, in the general agreement description.

In the first place, it must be presumed to have been the intent of the negotiators of the agreement and of the President, in issuing the proclamation relating thereto under authority of the Trade Agreements Act (sec. 350, Tariff Act of 1930, as amended), to modify the duties only as to merchandise already comprehended by the designated tariff paragraph. *Abercrombie & Fitch Co.* v. *United States*, 9 Cust. Ct. 336, C. D. 709; *Geo. S. Bush & Co., Inc., et al.* v. *United*

*States*, 26 Cust. Ct. 251, C. D. 1332; and *United States* v. *Canadian National Railways*, 29 C. C. P. A. 272 (Customs), C. A. D. 202.

Secondly, the language used in the trade agreement description does not, of itself, indicate any intention to include thereunder tennis-racket frames, made wholly or partly of the solid wood of the willow tree.

To recapitulate, it appears that, both in the original enactment of paragraph 409 of the Tariff Act of 1930 and in the modification thereof by the Presidential proclamation relating to the general agreement, there was used a term, "willow," which had received previous judicial interpretation to the effect that it embraced only the lighter or twig forms of willow and not the solid wood of the tree itself, and there is nothing to indicate any intent to depart from that interpretation either in the original enactment of the provisions of paragraph 409 or in its modification by the Presidential proclamation relating to the general agreement.

While, as has been said, the successive provisions of the Tariff Acts of 1922 and 1930 were not couched in language in all respects identical with that found in paragraphs 212 of the act of 1909 and 173 of the act of 1913, insofar as they related to osier or willow in its forms as such and to manufactures or articles composed thereof, the language of the 1922 and 1930 act provisions is substantially the same as that of paragraph 212 of the 1909 act, as will be seen from the following comparison:

Paragraph 212, act of 1909:

* * * osier or willow, including chip of and split willow, prepared for basket makers' use, twenty-five per centum ad valorem; manufactures of osier or willow and willow furniture, forty-five per centum ad valorem.

Paragraph 173, act of 1913:

* * * osier or willow, including chip of and split willow, prepared for basket makers' use, 10 per centum ad valorem; manufactures of osier or willow and willow furniture, 25 per centum ad valorem.

Paragraph 407, act of 1922:

* * * Furniture made with frames wholly or in part of * * * osier or willow * * * and covered wholly or in part with * * * osier or willow, * * * 60 per centum ad valorem; * * * osier or willow, including chip of and split willow, prepared for basket makers' use, 35 per centum ad valorem; all articles not specially provided for, wholly or partly manufactured of * * * osier or willow, 45 per centum ad valorem.

Paragraph 409, act of 1930:

* * * Furniture wholly or in chief value of * * * osier or willow * * * 60 per centum ad valorem; * * * osier or willow, including chip of and split willow, prepared for basket makers' use, 35 per centum ad valorem; all articles not specially provided for, wholly or partly manufactured of * * * osier or willow, 45 per centum ad valorem.

The tariff term, with the meaning of which we are here concerned, is "osier or willow." It will be seen from the foregoing that such term, as it appeared in successive tariff acts, after judicial interpretation thereof, was without change in itself, i. e., the term "osier or willow." Although there were changes in the language of the provisions with which that term was associated, none of such changes evidence a legislative intent to put a different meaning on the term "osier or willow" than that which it had already received in judicial interpretation.

In such circumstances, we think the rule of legislative approval of judicial interpretation is applicable and controlling. The situation is very like that which obtained in the case of *United States* v. *Bassichis Co. et al.*, 16 Ct. Cust. Appls. 410, T. D. 43133, a leading case on the subject. The merchandise there involved consisted of broken sheet glass imported during the life of the Tariff Act of 1922 and assessed with duty under the provision in paragraph 230 of that act for "all glass * * * not specially provided for."

The tariff term "all glass" first appeared in paragraph 112 of the Tariff Act of 1897, and, in *Pacific Glass Works* v. *United States*, reported in volume 1 of the 1898 Synopsis of Decisions, page 682, T. D. 19311, the Board of United States General Appraisers (now United States Customs Court) held that broken glass was embraced within the term "all glass" found in said paragraph.

In its decision in the *Bassichis Co.* case, *supra*, our appellate court said:

This and other courts, in many cases, have given controlling effect to the doctrine that the legislature is presumed to have approved of judicial interpretations of tariff legislative provisions by the subsequent reenactment of the same or substantially the same language. *United States* v. *Baruch*, 223 U. S. 191; *Latimer* v. *United States*, 223 U. S. 501; *United States* v. *Ascher & Co.*, 11 Ct. Cust. Appls. 453, T. D. 39532; *United States* v. *Yuen et al.*, 11 Ct. Cust. Appls. 479, T. D. 39571; *Grauert Co.* v. *United States*, 11 Ct. Cust. Appls. 495, T. D. 39632; *Wanamaker* v. *United States*, 13 Ct. Cust. Appls. 93, T. D. 40939; *United States* v. *Basket Importing Co.*, 13 Ct. Cust. Appls. 98, T. D. 40941; *United States* v. *Beierle, supra* [1 Ct. Cust. Appls. 457, T. D. 31506]; *United States* v. *Post & Co.*, 3 Ct. Cust Appls. 260, T. D. 32568; *United States* v. *Frank*, 15 Ct. Cust. Appls. 97, T. D. 42184; *Frei Art Glass Co.* v. *United States*, 15 Ct. Cust. Appls. 132, T. D. 42214; *United States* v. *Lilly & Co. et al.*, 14 Ct. Cust. Appls. 332, T. D. 41970.

In T. D. 19311 there was a definite, clear interpretation of the words "all glass, * * * not specially provided for," which, when unappealed from, became the definitely determined judicial status of the question, to be followed in the administration of the tariff act. After that decision was rendered and promulgated, Congress, on three successive occasions, used the identical language, and it must be presumed that in using it the legislative body was fully cognizant of such judicial interpretation and the results that would ordinarily flow from it. Looking at the question as an initial one, we think the Board of General Appraisers might well have held that paragraph 112 of the Act of 1897 did not cover the merchandise, and that it was waste or junk, depending upon the particular facts concerned with the broken glass then at bar. *Willits & Co.* v. *United States*, 11 Ct. Cust. Appls. 499, T. D. 39657; *Hartley* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644.

But Congress, having the situation before it and presumably being fully cognizant of the import and effect of the same, on three successive occasions failed to change the provision in any respect. If any effect or controlling influence is to be given to the doctrine, it would seem to apply here.

Accordingly, we hold that the provision for "willow" in paragraph 409 of the Tariff Act of 1930, as originally enacted and as modified, includes only the lighter or twig forms of willow and that the provision for "all articles not specially provided for, wholly or partly manufactured of * * * osier or willow" in the said paragraph, as originally enacted, and the provision for "Tennis-racket frames, valued at $1.75 or more each, wholly or partly manufactured of * * * osier or willow," contained in the general agreement modification thereof, do not embrace such articles or rackets, wholly or partly manufactured of solid willow wood, such as are involved here.

Under such circumstances, the imported racket frames are properly classifiable under the provision in paragraph 412, as modified, as claimed.

Judgment will issue sustaining the protest claim accordingly.

### DISSENTING OPINION

OLIVER, Chief Judge: I respectfully dissent from the conclusion reached by my learned colleagues.

The basis of my disagreement lies in the importance attached by the majority to the case of *F. L. Slazenger* v. *United States*, 22 Treas. Dec. 1080, T. D. 32641, and the consequent application of the principle of legislative approval of judicial interpretation.

First, it should be noted that the statutory construction enunciated in the *F. L. Slazenger* case, *supra*, was based on the rule of *ejusdem generis*, as disclosed in the following quotation from the court's decision:

* * * We think a careful reading of paragraph 212, supra, leads to the conclusion that in framing the paragraph it was not the purpose of Congress to do more than provide for the lighter or twig forms of willow, such as are commonly used for basket making and other kinds of wickerwork. First, there is the provision for chair cane or reeds; next, that for osier or willow, round or divided into sections by splitting, and the manufactures of these forms of willow, and willow furniture. It is very evident that the terms "osier" and "willow" are used interchangeably and that the provision for "manufactures of osier or willow" was designed only to include articles made of these lighter forms of willow, while it is a matter of common knowledge, we think, that all willow furniture is made from osier willow. It would seem to be clear that under the rule of *ejusdem generis* articles made from the solid wood of the trunk of the willow tree are excluded from this paragraph. * * *

The principle of *ejusdem generis* is defined in *United States* v. *Imperial Wall Paper Co.*, 14 Ct. Cust. Appls. 280, T. D. 41886, as follows:

When specific or definite words are followed by general words, the latter, when the legislative intent is not otherwise indicated, is confined to things of the same kind as those mentioned specifically. This principle is known as the rule of

*ejusdem generis,* and has been frequently applied in the construction of tariff language by this and other courts. *United States* v. *Kelley Hardware Co.,* 12 Ct. Cust. Appls. 204.

Under the foregoing definition of the principle of *ejusdem generis,* paragraph 409 of the Tariff Act of 1930, which is primarily involved herein, is not susceptible of construction by application of the rule, insofar as the present case is concerned. The provision in that paragraph, as originally enacted, for "all articles not specially provided for, wholly or partly manufactured of rattan, bamboo, osier or willow, * * *," appears as a residuary provision that presumably would include willow tennis-racket frames. Support for such an interpretation is reflected in the modification to paragraph 409 under the General Agreement on Tariffs and Trade, T. D. 51802, which contains the specific provision for "Tennis-racket frames, valued at $1.75 or more each, wholly or partly manufactured of * * * willow." It is well established, as pointed out in the majority opinion, that the modification of a paragraph under a trade agreement is "intended to change the rate of duty only on articles already embraced within the scope of said paragraph," *United States* v. *Canadian National Railways,* 29 C. C. P. A. (Customs) 272, C. A. D. 202. Hence, willow tennis-racket frames must have been included within the scope of paragraph 409, as originally enacted. To exclude the articles in question, as the majority does, from the provision for tennis-racket frames in paragraph 409, as amended by T. D. 51802, *supra,* unduly limits the scope thereof, without proper basis therefor from the record herein.

The tariff term, with the meaning of which we are here concerned, is not, as the majority opinion states, "osier or willow," but rather "Tennis-racket frames, valued at $1.75 or more each, wholly or partly manufactured of * * * willow." It is not disputed that the articles in question are tennis-racket frames, that they are valued at more than $1.75 each, and that they are partly manufactured of willow. In other words, the merchandise before us meets all of the requirements of the descriptive provision in paragraph 409, as amended, *supra,* under which it was classified. If Congress, in enacting paragraph 409 of the Tariff Act of 1930, and the negotiators of the General Agreement on Tariffs and Trade, by the amendment to paragraph 409, did not intend to include the imported willow tennis-racket frames within the provisions thereof, then it is difficult to give any meaning to the *eo nomine* provision for tennis-racket frames, with the descriptive or qualifying words in paragraph 409, as amended, *supra,* that so specifically cover the present merchandise.

The rule of legislative approval of judicial interpretation cannot be applied herein because of the material change in statutory language

between paragraph 212 of the Tariff Act of 1909, which governed the decision in the *F. L. Slazenger* case, *supra*, and paragraph 409 of the Tariff Act of 1930, with the amendment thereto, that controls the present case. The case of *United States* v. *Bassichis Co. et al.* (16 Ct. Cust. Appls. 410, T. D. 43133), characterized in the majority opinion as "a leading case on the subject," is distinguishable. The rule was there applied after the appellate court had found that "Congress, on three successive occasions, used the identical language." That is not the condition with respect to the statutory provisions involved herein. On the contrary, paragraph 409 of the Tariff Act of 1930, with the amendment thereto, involved herein, embodies broader and more comprehensive language than that which appeared in paragraph 212 of the Tariff Act of 1909, which is the basis for the majority's action as they invoke the principle of legislative approval of judicial interpretation.

The protests should be overruled.